## KERR and another *v.* THE MERCHANT'S EXCHANGE COMPANY and others.

Where a tenant hires rooms only, his interest ceases with the destruction of the building.

Therefore, where the complainants hired certain apartments designated by numbers in the Merchant's Exchange, which was destroyed by the great fire during the demise: *it was held*, that they could not claim new rooms (on the old site) in the new exchange.

HEARING on bill and answer.

The Merchant's Exchange Company were incorporated by the legislature of the state of New-York, for the purpose of

*May 8, 1889.*

*Landlord and tenant.*
*Rooms.*
*Fire.*

building an exchange in the city of New-York. Before this building was completed, they leased to one of the complainants, Anthony Kerr, certain rooms in it; and afterwards leased the same rooms and, at different times and by different leases, other rooms to both the complainants, who occupied them and carried on the business of an eating-house. Five different leases were granted to the complainants, under which they (and their under-tenant of three rooms, let for a post-office) occupied them at the time of the great fire in the month of December, one thousand eight hundred and thirty-five. The time for which the leases were to continue, except for the last three rooms, had not yet expired. The whole building, including all these rooms, was destroyed by the fire.

The premises thus demised were described in the leases thus : " Two certain rooms, (Nos. 10 and 11,) and the cellar under the same, in the south-west corner of the basement story of the exchange building; the room in the exchange building known and distinguished as number eight in the basement story ; two certain rooms in the exchange building, known by the numbers 8 and 9; those certain rooms in the exchange building known and distinguished as the post-office and numbered 12, 13, 14." The first and fourth of these leases contained the usual covenant, on the part of the lessors, for quiet enjoyment ; and on the lessees' part, to leave the premises in good repair, wear and tear and damage by accidental fire excepted. There was a clause for re-entry on breach of any of the covenants by the lessee.

After the fire, the company proposed to the tenants that they should pay the rent up to the time of the fire and that the leases should be cancelled. This offer was accepted by all the tenants, except the complainants and one other person, who refused to accede to this arrangement. In consequence of this refusal on their part, they were called on by the company on the first day of February, one thousand eight hundred and thirty-six, which was the first quarter day after the fire, to pay the rent to that day due for the rooms leased to them ; and it was accordingly paid. No rent had since been paid or offered by the complainants, although demanded by the company, nor had they sued for it.

Before another quarter day, the Merchant's Exchange Com-

1839.

KERR
v.
THE MER-
CHANT'S EX-
CHANGE CO.

pany commenced preparations for putting up a new building, in place of the one which had been destroyed ; and, for that purpose, their workmen went upon the site of the old building and removed the broken and prostrate walls, stones and rubbish lying there, among which were the stones that had formed the walls of the rooms so leased to the complainants. This was done without notice to or the consent of the complainants. On the other hand, it did not appear that they had objected to these proceedings or to the erection of the new exchange by the Merchant's Exchange Company.

The company had an insurance upon the building to the amount of sixty thousand dollars ; and received, on account of it, thirty-three thousand one hundred and thirty-three dollars ; the balance being lost by reason of the insolvency of the insurance companies.

The Merchant's Exchange Company had commenced and were erecting a larger and more costly building, in the place of the one destroyed by the fire. It covered more ground, but not all the land which the old one took in; and especially, some of the space which was included in the rooms so let to the complainants was not included in any room or part of the new building; the rooms were of different form, size and height from what those were in the former erection. After considerable progress had been made in this new work, the complainants, first personally, afterwards by their solicitor Mr. Lawrence, called on the company " for possession of the premises, to which the leases aforesaid, which then existed, applied or, if that were impossible, on account of the different construction of the new building, then for other equivalent accommodation, as far as the state of the building would allow." These demands were made in writing and, in this letter, it was stated that the building was in a state of such forwardness, that it admitted of such occupation as they claimed. It did not appear that they had ever previously adverted or intimated an intention to advance any such claim or that they had objected to the company's building a new exchange or to the mode of their building or that they had ever expressed or shown any intention or desire to repair or rebuild the old edifice or any part of it. It was alleged in the bill that the complainants, " being desirous of obtaining, by legal means, possession of the pro-

perty," sent a surveyor "to ascertain the parts which are com-
prehended within the spaces formerly occupied by the rooms,
&c.," "in order that they might have the means of proceeding
at law with due certainty for the vindicating and obtaining their
rights."

The bill charged that the company had already received
considerable profits from a part of the new building included
within the space which, in the former building, was leased to
the complainants. But this was denied in the answer, "ex-
cept it be from the upper basement story of the said new
building which occupies probably two feet or thereabouts of
the space which constituted the upper part of the said rooms
so leased to the complainants."

The defendants, in their answer, denied that the leases em-
braced in terms or by implication the land under the rooms
so demised or required the company to rebuild the exchange
or to furnish similar rooms or equivalent accommodations for
the complainants with those which they had in the former
building. They also submitted that the space occupied by
the leases was not leased ; and they insisted that the thing
demised was merely the room, which ceased to exist after the
destruction by the fire.

The annual profits of the complainants were more than ten
thousand dollars ; and they estimated the loss of profits, by
means of the premises, at seventy thousand dollars.

The bill alleged that the complainants had committed no
breach of any of the covenants contained in the lease ; while
the answer insisted that the non-payment of the rent, since the
first of February, one thousand eight hundred and thirty-six,
was a breach.

No specific relief was asked by the bill. It contained the
usual prayer for general relief.

Mr. *D. B. Ogden*, for the complainants.

When the exchange was burned on the sixteenth day of
December, one thousand eight hundred and thirty-five, the
complainants were unwilling to surrender their lease ; and as
the defendants demanded the rent in full to the first of Febru-
ary, one thousand eight hundred and thirty-six for post-office
and rooms, the complainants complied therewith and paid the

whole rent to that day. In the month of March, one thousand eight hundred and thirty-six, the defendants began to remove the ruins and rebuild. The complainants then demanded rooms equal to those they formerly held. The object of the complainants in this bill is to discover the former location, with a view to an ejectment for the possession.

1. The destruction by fire did not terminate the lease; *Belfour, Administrator, &c.* v. *Western,* 1 Term Rep. 312; *Hallett* v. *Wylie,* 3 J. R. 44.

2. The demand and receipt of subsequent rent, is a recognition of the continuance of the lease.

3. The entry was an eviction and no rent accrued until after possession is restored. This eviction did not terminate the lease, although payment of the rent was suspended: *Baker* v. *Holtpzaffoll,* 4 Taunt. 44, S. C. 18 Ves. 115; 3 Kent's Com. 465, new ed.

4. Discovery is necessary to enable the complainants to bring ejectment.

5. The defendants, by their own act, in changing the construction of the building, cannot deprive the lessee of his right and hence relief is sought here.

If the complainants cannot have possession, still they are entitled to damages upon a *quantum damnificatus* or by reference to a master: *City of London* v. *Nash,* 3 Atk. 516; *City of London* v. *Mitford,* 14 Ves. 41.


Mr. *Bidwell,* for the defendants.

The bill contains no specific prayer for relief; and the complainants seem to claim the benefit of an action of trespass and ejectment under the general prayer. It is important to see what was devised; it was rooms known by numbers—not buildings or lands. After the destruction of the exchange, the defendants were driven to their legal rights. Although the rent was paid to the first of February, this was because they had occupied for part of the quarter. The present rooms are very different to the former ones; they are in no way correspondent or similar. The complainants have never offered to pay the rent after the first of February. They have stood by and made no objection to the present plan and construction of the building. This is a novel case. There is nothing in the

reports from the earliest times to show that a tenant of a room is entitled to a like room in a new building. The complainants have lost nothing by the deprivation; and they only allege they have not made money—not that they have lost it. They may have made as much or more where they now are; they have the same skill and ability, the same capital—and yet want to recover a large amount from the misfortune of the defendants.

By the law, a landlord is not bound to rebuild, although the tenant must pay rent, unless the covenant exempts him: *Patterson* v. *Ackerson*, 1 Edwards's Ch. Rep. 96; *Gates* v. *Green*, 4 Paige, 355; *Pollard* v. *Schaeffer*, 1 Dallas, 210. These cases show that though premises are destroyed, the tenant is bound to pay rent. He may not be required to rebuild; and this is the only exemption that he has the benefit of. The defendants were not bound to rebuild, although they were entitled to payment of the rent; and, hence, they were not bound to provide the complainants with similar accommodations or rooms.

But the most important question is, as to what was demised? It was rooms, and not the land: Shep. 12. A cellar, room, &c., may pass by their own terms and nothing more; and as land is not mentioned, no land passed; *Doe ex dem, Freeland* v. *Burt*, 1 T. R. 701; 4 Camp. 219; *Penruddock's Case*, 5 Coke, 100. No estate can be created of mere space of air above the ground. It is true there may be a property in a room: Brook's Abr. Tit. Demand, 20; Year Book, 5 Hen. 8, p. 9; still, if the foundation fail, the property goes—it ceases with the thing itself: *Jackson ex dem, Loux* v. *Buel*, 9 J. R. 298; *Jackson, ex dem. Saxton* v. *May*, 16 Ib. 184. When the house is destroyed or trees are blown down, the tenant's right ceases: 11 Coke, 816; 1 Salk. 360. The case of *Freligh* v. *Platt*, 5 Cow. 494, related to a pew; and it was there shown that if a church be burned, the right to the pew is gone. But the case of *Winton* v. *Cornish*, 5 Ohio R. 303, is a parallel case to the one now before the court. Collet, J., fully explains the law; and his reasoning is applicable. It is a strong and decisive case. The tenant was turned out of his shanty which he had erected. A bill for possession of land is demurrable. There is no jurisdiction.

The remedy is at law. If any right be in the complainants, it is a legal right.

Mr. *Ogden*, in reply. He has now no longer any doubt on the subject. The law has now been shown to be, that the tenants are liable to pay their rent to the end of the lease ; and hence it is clear that the lease is continued. The reason is, that the land remains, although the house is gone, and that the tenant has an interest in the land for the term. The cases all show this. If there be an end of the thing demised, there must be an end of the lease. The case of the pew is not analogous, because no rent is paid for the pew after destruction. The payment of the rent to the first of February is conclusive to show that the defendants considered the tenant as having an interest subsequent to the fire, and this is also manifest from the fact that they demanded a surrender of the lease ; their motive was to compel the complainants to cancel the leases ; and why cancel, if they had ceased ? After this, they were trespassers in taking possession. As to the jurisdiction, the complainants were compelled to come here. They cannot describe the premises so as to bring ejectment, owing to the acts of the defendants. The novelty of the case is admitted ; but it requires a remedy. In most cases in New-York, leases are made out of houses and the land is not mentioned—yet land is intended to pass. It is a question of construction according to the intention. If, after a house is destroyed, the landlord receives rent, it shows he intended to lease the land that remains. In the case in Ohio, there had been no demand of rent after the fire and the landlord had given notice to the tenant that the lease was at an end and forbade his erecting a building. No such facts here ; but the contrary, to show the lease continued.

THE VICE-CHANCELLOR :—In deciding this case, I am content to follow the doctrine of the supreme court of Ohio, in *Winton* v. *Cornish*, 5 Ohio Rep. 303. In that case, there had been a lease of a cellar and a room over it in the corner of a building several stories high, which was destroyed by fire. After the destruction, the lessee erected a small building on the site of the cellar and room, and of a height corresponding

*Margin:*
1839.

KERR
*v.*
THE MERCHANT'S EXCHANGE CO.

*Dec.* 24.

1839.

KERR
v.
THE MER-
CHANT'S EX-
CHANGE CO.

with the height of the room which he had previously occupied ; and the lessor brought an action of ejectment to dispossess him, insisting that the lessee took no interest in the land and that, by the destruction of the building, his interest in the cellar and room had ceased.   The court considered that such was the true construction of the lease ; and, accordingly, held that, in the destruction of the building, the demised premises being gone, the lessee's interest went with it.

So, in the present case, the leases are not to be considered as leases of land, but only of apartments in the building distinct from the land on which it was erected.   Leases must be construed according to the intention of the parties and with reference to the subject matter, which, in this instance, were rooms or apartments in the building designated by certain numbers.

In *Doe on the demise of Freeland* v. *Burt*, 1 T. R. 701, Ashhurst, J., observes that it may be necessary to put a different construction on leases made in populous cities from that on those made in the country ; and he gives reasons for the difference which apply to this case.   I have no difficulty, therefore, in construing the lease in question as passing no interest in the land; and I think it follows that, with the destruction of the premises which were demised, namely, the apartments in the building, the lease itself and all rights and interest under it terminated.   Where the demise is of a house and lot or of land with a building thereon or where land is comprised in the lease and the buildings are destroyed by fire, the lease or contract is not at an .end, unless in the event of destruction of the building it is so stipulated, because the land remains and the lessee's right of possession is not disturbed. He may still use and occupy the land ; and his covenant to pay the rent may well continue in force.   But, I apprehend such is not the case when the whole subject matter of the lease is destroyed and gone.   And I cannot but think that when the Merchant's Exchange was burned down, the complainants' interest ceased and they were no longer liable upon their covenants to pay rent.   True, that in the demand of a quarter's rent up to the first of February, one thousand eight hundred and thirty-six, the defendants appear to have considered the lease as still in force and the relation of landlord and tenant

as still subsisting. But in doing so, they acted under a mistake as to their own and the complainants' legal rights; and I am inclined to think that, in paying the whole of that quarter's rent, the complainants have also acted under a similar mistake. This demand and payment of rent does not, however, in my judgment, continue the relation of landlord and tenant beyond the period when it occurred, nor give the complainants a right to relief under this bill.

It must be dismissed; but, as the complainants may have supposed, from the defendants' manner of treating the subject, that they had rights, it may be dismissed without costs.