## Cyrus Stockwell *vs.* Ira Hunter.

A demise of the basement rooms of a building of several stories in height, without any stipulation, by lessor or lessee, for rebuilding in case of fire or other casualty, gives the lessee no interest in the land, though he pays all the rent in advance; and if the whole building is destroyed by fire, his interest in the rooms is terminated.

The defendant was summoned to answer to the plaintiff in a plea of trespass and ejectment; for that Samuel M. Burnside, on the first day of October, in the year of our Lord eighteen hundred and forty one, demised to said Stockwell, the plaintiff, ' the whole of the cellar or basement story under the wool store then owned by said Burnside, situate in the town of Worcester, on the southerly side of Market Street, so called; intending to lease the easterly and westerly cellars under the wool store; the said two cellars being the whole of

the basement;' to hold the same to the said Stockwell for the term of five and one half years, in manner following ; the westerly cellar or basement five and a half years from the date of said lease, and the easterly cellar or basement five and a half years from the first day of April then next : By force of which demise, the said Stockwell then entered into said demised premises with the appurtenances, and became possessed thereof; and he, being so thereof possessed, the said defendant thereafterwards, on the twenty first day of July now last past," (1844,) " with force and arms entered into the westerly cellar or basement story aforesaid, which the said Burnside had demised, as aforesaid, to said Stockwell, in form aforesaid, which term is not yet expired, and the said Stockwell, from the said westerly cellar or basement, ejected ; and other wrongs committed, against the peace, " &c.

At the trial in the court of common pleas, before *Washburn*, J. the defendant objected to the sufficiency of the plaintiff's declaration, and denied his right under it to recover possession of the premises ; because, amongst other things, it did not allege that said Burnside was the owner of the demised premises, nor set forth what the plaintiff sought to recover. The judge overruled this objection.

The plaintiff then read the lease mentioned in his declaration, which contained no stipulation, either by the lessor or lessee, as to rebuilding in case of fire or other casualty, dated October 1st 1841 ; and it was admitted that the plaintiff entered into the demised premises, and occupied them until they were burned, as hereinafter stated. The defendant also admitted that the plaintiff had performed all that he was bound, by the lease, to perform, and had thereby, in effect, paid the full rent in advance. The defendant also admitted (for the purpose of the trial) that said Burnside, at the time of his said demise to the plaintiff, was the owner of the demised premises.

It was admitted that the plaintiff, on the 21st of July 1844, entered into the premises described in his declaration, and was immediately afterwards ousted and ejected therefrom by the defendant.

38 *

In the defence, it was stated and admitted that the building, of which the demised premises formed a part, was of brick, three stories in height above the basement, and that each story was occupied by distinct tenants, and that said building was burned down, on the 6th of March 1843, "except some portion of the outer brick walls, which were not suitable to repair, so as to make a good building."

The defendant introduced a deed made to John Liscom and others, by said Burnside, dated November 23d 1843, which conveyed to them, in fee, the ground on which the said building, that was burned, was erected.

The plaintiff gave in evidence a copy of a notice, signed by himself, and served upon said Liscom and others on the 2d of April 1844, stating to them that he held a lease from Burnside, (describing it truly,) and that he did and should claim his full right to all the premises therein described, and that if said Liscom and others should provide and erect any building upon or over the premises described in said lease, he should, at all times during the continuance of said lease, claim and maintain his right to use, occupy, enjoy and fully possess all the premises contained in said lease, with all the privileges and appurtenances thereto belonging, and all the space and dimensions contained in said lease.

The defendant called witnesses, whose testimony tended to prove that, after said building was burned, and before said Liscom and others purchased said estate, Liscom had an interview, by himself and his agent, with the plaintiff, in relation to his claim upon the estate, under his lease ; that the plaintiff represented that he had no claim upon the land, but that his claim was upon said Burnside personally ; that if said Liscom would purchase the estate, and put up a building, the plaintiff would make no claim for it, and would improve his own estate in the vicinity; and that said Liscom, in consequence of his supposing that the plaintiff had no claim, purchased the estate, when otherwise he would not have done so.

There was also evidence tending to show that whatever representations the plaintiff made to Liscom were made under a misapprehension of his legal rights.

There was also evidence tending to show that as soon as said purchase was made by Liscom and others, Liscom took down the brick walls that remained standing, dug the cellar two feet deeper, and began the foundation of the present building in the autumn of 1843; that the plaintiff was almost daily in the immediate vicinity, and saw what was going on, but made no objection thereto, nor claim to the building, until his said notice on the 2d of April 1844; and that the present building, which covers the same ground as the former building, and is three stories high, was completed during the year 1844.

The evidence also tended to show that there was a brick partition under the former building, so that, after the fire, there were brick walls standing around the premises demised to the plaintiff, and extending above them; and that there were marks, plain to be seen, of the places for the timbers, after the fire; that there was no cellar, nor any floor under said demised premises, at the time of the demise to the plaintiff, and that the present premises occupied by the defendant, are a little larger, in one direction, than said premises were; and that the height of the original demised premises, between floor and ceiling, was the same as that of the present room occupied by the defendant.

The defendant, claiming to hold as lessee of Liscom and others, contended that, as the plaintiff's premises were destroyed by fire, he could not recover those erected by Liscom and others in their stead; that if he could recover, in any event, he could not recover without having offered to rebuild or finish the premises which he claimed; that if he could otherwise recover, he was estopped by his representations, made to Liscom before his purchase of the estate, to set up this claim to the premises, or recover the same in this action.

The judge instructed the jury, that "if the plaintiff fraudulently, or through the want of reasonable care and diligence n ascertaining his title, made a representation to Liscom that he had no interest in the estate, and Liscom purchased t in consequence, supposing that representation was true,

the plaintiff was estopped to set up a claim to the estate, under his lease, and thereby deprive Liscom, or his lessee, of the estate; otherwise, that the plaintiff was entitled to recover." The jury returned a verdict for the plaintiff for damages, and the defendant alleged exceptions to said instructions. The plaintiff afterwards remitted the damages assessed by the jury.

*Newton*, for the defendant. The plaintiff cannot recover possession, in this process, because his writ and declaration do not claim it, and because he has remitted the damages. Originally, the process of trespass and ejectment was for damages only. Afterwards the term was recovered, and of course possession, with damages. Runnington on Ejectment, 4 *& seq.* 3 Bl. Com. 199.

The fire terminated the lease to the plaintiff. Co. Lit. 4 *b,* 48 *b. Doty* v. *Gorham,* 5 Pick. 487. *Marcey* v. *Darling,* 8 Pick. 283. *Doe* v. *Burt,* 1 T. R. 701. *Winton* v. *Cornish,* 5 Ohio, 477. On any other doctrine, the occupant of a cellar under a burnt building might prevent the lessor from rebuilding at all, or only at a greatly enhanced expense. *Kerr* v. *Merchants Exchange Co.* 3 Edw. Ch. 315.

The plaintiff is estopped by his representations to Liscom. He had greater knowledge than Liscom had of the terms of his lease; and it was not necessary that his representations should have been fraudulent, in order to estop him. *Fay* v. *Valentine,* 12 Pick. 40.

The plaintiff should have offered to repair, or to join the owners in repairing, to the extent of his interest, when he found that reparations were to be made. See *Belfour* v. *Weston,* 1 T. R. 310.

*J. C. B. Davis,* ( *G. Parker* was with him,) for the plaintiff. The plaintiff's declaration is sufficient to entitle him to recover possession. No change was introduced into the declaration, after it was decided that a plaintiff in trespass and ejectment might recover the term as well as damages. 3 Bl. Com. 200, 201. Stearns on Real Actions, 52, 400. See the precedents, in Runnington on Ejectment, 469, 470. 1 Saund.

170. 2 ib. 108. Dyer, 304 *b.* 305 *a.* Amer. Precedents, 296. (381.)

The interest taken by the plaintiff, under his demise, was an interest in the realty; for the authorities show that ejectment lies for it. *Sprigg* v. *Rawlinson,* Cro. Car. 554. 2 Crompt. Pract. 150. Bac. Ab. Ejectment, A. *Edge* v. *Strafford,* 1 Crompt. & Jerv. 391. *Inman* v. *Stamp,* 1 Stark. R. 12. The plaintiff could not enjoy his demise, unless he had an interest in the soil. If his interest was only personal, the lessor might have carried off the building, and yet the plaintiff would have been liable for rent, if it had not been paid in advance; for a mere trespass by the lessor, without eviction, does not excuse the lessee from paying rent. *Hunt* v. *Cope,* Cowp. 243. *Pendleton* v. *Dyett,* 4 Cow. 581. *Ogilvie* v. *Hull,* 5 Hill, 52. A demise of a building to one lessee would carry the land. *Allen* v. *Scott,* 21 Pick. 29. *Bacon* v. *Bowdoin,* 22 Pick. 401. Why not, when different parts of a building are demised to different lessees? Buildings are part of the realty, even when put thereon by a lessee. *Elwes* v. *Maw,* 3 East, 38. 2 Kent Com. (2d ed.) 362. Ashhurst, J. says, in 1 T. R. 703, that in London "different persons have several freeholds over the same spot." See also *Loring* v *Bacon,* 4 Mass. 575. *Cheeseborough* v. *Green,* 10 Connect. 318. *Proprietors of Meeting-House* v. *City of Lowell,* 1 Me;. 541.

The cases cited from 5 Ohio and 3 Edw. Ch. are not law in this Commonwealth. Licenses were there confounded with grants, and grants of land distinguished from grants of buildings. The argument from hardship was there allowed force. But that argument was disregarded by this court, in *Fowler* v. *Bott,* 6 Mass. 63, where a lessee of a mill was held, on his covenant to pay rent, after the mill was destroyed by fire, though the lessor did not rebuild. See also *Phillips* v. *Stevens,* 16 Mass. 238. *Hallett* v. *Wylie,* 3 Johns. 44. *Bullock* v. *Dommitt,* 6 T. R. 650. *Pindar* v. *Ainsley,* cited by Buller, J. in 1 T. R. 312. *Patterson* v. *Ackerson,* 1 Edw. Ch. 96.

The plaintiff is not estopped by his representations to

Liscom, as the jury have found that they were not made fraudulently. *Parker* v. *Barker*, 2 Met. 423.

The decision was made at October term 1847.

DEWEY, J.    The question presented upon these exceptions is as to the rights of a lessee for a term of years of the cellar and basement story of a building three stories in height above the basement, each story being occupied by separate tenants, and the whole building consumed by fire, to such an extent that it was requisite to build anew; there being, however, a brick partition under the original building, and there being, after the fire, brick walls standing around the demised premises.    Subsequently, a purchaser from the lessor has rebuilt, deepening the cellar two feet, and somewhat enlarging, in one direction, the basement.    The lessee of the basement insists that he holds the estate and interest in the premises demanded, during the period fixed by his lease.    The defendant, on the other hand, contends that the building upon the premises, which was the subject of the lease, having been destroyed by fire, and there being no covenant, on the part of the lessor, to rebuild, the lessee himself, not having offered to rebuild or to contribute towards the expense of rebuilding, the lease as to the basement is at an end, and the lessee cannot set up any legal estate in the premises.

The counsel for the plaintiff has very fully maintained his general position, that a lease or other conveyance of a distinct portion of a dwelling-house is a conveyance of an interest in real estate; for instance, a lease of a chamber or warehouse, as held in *Sprigg* v. *Rawlinson*, Cro. Car. 554; or rooms for lodging, as in the case of *Inman* v. *Stamp*, 1 Stark. R. 12. There may be several distinct tenements under the same roof; and they are as essentially distinct, when one is under the other, as when one is by the side of the other.    *Proprietors of Meeting-House in Lowell* v. *City of Lowell*, 1 Met. 541.    *Cheeseborough* v. *Green*, 10 Connect. 318.    The same principle is also recognized in the case of *Loring* v. *Bacon*, 4 Mass. 575.

But the question really is, not whether trespass and

ejectment would well lie for a lessee of a lower room in a building, the chamber over it being owned by another, if the building thus owned and occupied remained entire and adapted for use and improvement as a tenement, and no destruction by fire had occurred ; but whether such leases of distinct rooms, viz. of a chamber to one and a basement to another, carry with them any interest in real estate, beyond that connected with the enjoyment of the particular room ; and whether such interest does not terminate, as to the lessee, with the destruction of the building, when neither the lessor nor lessee is bound to rebuild.

It was said by Ashhurst, J. in the case of *Doe* v. *Burt,* 1 T. R. 703, that " the construction of all deeds must be made with reference to their subject matter ; and it may be necessary to put a different construction on leases made in populous cities, from those made in the country. We know that in London different persons have several freeholds over the same spot." The application of these remarks, in the case cited, was upon the point of rejecting, in a lease in such cases, the maxim so often quoted, *cujus est solum, ejus est usque ad cœlum ;* but they seem alike to authorize a construction of leases of lower or upper rooms, demised separately, in reference to the termination or destruction of the interest, different from that usually applied to leases of entire buildings to a single tenant.

The reason for the rule that an interest in land passes by the grant of a house, a factory, a mill, or the like, is obviously founded in the necessity of the case. The grant of the thing carries with it whatever is necessary to the enjoyment of the thing granted. The land upon which it stands passes as incident to a house or factory that is leased. But when, from other causes, the enjoyment of the grant is at an end, or the principal has failed, by reason of its destruction, to be an object of beneficial use, it seems reasonable to hold that as the incident is no longer required to support the grant, the interest of the lessee in the same should be terminated. The case I am stating should be understood to be a naked grant of a

part of a building, having different lessees holding, by like tenure, rooms above or below the other lessees. The tenants cannot all have the soil; they cannot all have the realty "*usque ad cœlum.*" Such leases, from the nature of the case, must be construed in some degree with reference to the peculiar circumstances.

The proper construction of such a lease as the present, as it seems to us, is, that the lessee's right of occupation of the land is an interest, for the time being, defeasible by the destruction of the building by fire. We see no other practicable rule that can be reasonably applied in cases like this, and where there is no stipulation to rebuild, either on the part of landlord or tenant, but to hold that the casualty, which has destroyed the building, has also left the lessor free to rebuild upon the ruins of the former edifice. If he may rebuild, then he must, from the nature of the case, have the right to enter upon the soil, and take possession of the land; which would be inconsistent with the rights claimed for the plaintiff, as a lessee entitled to the undisturbed possession of the ground covered by the tenement.

These views seem to be fully sustained by adjudications in courts of our sister States. Thus the case of *Kerr* v. *Merchants Exchange Company*, 3 Edw. Ch. 315, (which was a lease of certain rooms in the Exchange, the building having been destroyed by fire,) it was held that where a tenant hires rooms only, his interest ceases with the destruction of the building. McCoun, vice chancellor, in that case, says, "the leases are not to be considered as leases of land, but only of apartments in the building distinct from the land on which it was erected. Leases must be construed according to the intention of the parties, and with reference to the subject matter. I have no difficulty in construing the lease in question as passing no interest in the land; and I think it follows that, with the destruction of the premises which were demised, namely, the apartments in the building, the lease itself, and all right and interest under it, terminated."

The case of *Winton* v. *Cornish*, 5 Ohio, 477, is perhaps a

stronger case upon this point.   The lease there was of " the store room and cellar thereunder in the north east corner of Sycamore and Front Streets in Cincinnati," for the term of three years.   The building, which was of several stories in height, was destroyed by fire during the first year, but the lessee made·such repairs, by way of covering the place over the store room and cellar, as to continue to occupy about the space of the room leased, and not greater nor higher in the ceiling.   The lessor claimed the right to enter to rebuild, and contended that the fire destroyed the room and cellar, and left no·interest in the lessee, under the lease.   The court held, that by the grant of the whole house the land might pass; but that, by a lease of a part, or a single story, it does not pass; and that what passes must depend upon the intention of the parties, to be collected from the lease ; and that a lease of a cellar and lower room in a building of several stories gives the lessee no interest in the land ; and that if the whole building is destroyed by fire, all the interest of the lessee is gone. This decision carries the principle very far, perhaps it may be thought too far by some, inasmuch as the lessee had made such repairs as enabled him to occupy the premises leased to him.

The case we have before us presents the right of the lessee much less favorably for the continuance of his interest, than the case of *Winton* v. *Cornish*.   Here the plaintiff virtually abandoned, and forbore to make any temporary repairs to render the room adapted to use ; while, in the other case, the lessee always insisted upon his right to occupy, and made repairs above his rooms, to render them tenantable.   Without deciding any principle beyond that required by the case directly before us, the court are of opinion that the present plaintiff had no such interest in the demanded premises, as will entitle him to recover possession against the lessor or one who has rebuilt under the lessor's authority and with his title.

The counsel for the plaintiff have urged upon our consideration the well settled doctrine of the English courts, as well as

of our own, that upon a lease for years with a covenant to pay a stipulated annual rent, the rent is payable by the lessee, to the end of his term, although the property be destroyed by fire. We do not think that it necessarily results from that course of decisions, that in a case like the present, the interest in the land may not be defeated by the destruction of the building before the expiration of the term, or that the lessor will not discharge all claims upon his lessee for rent, after the lessor shall enter and take possession for rebuilding. Whether for a payment of rent, made in advance, the lessee will, in the case of such entry by the lessor to rebuild, be entitled to recover back any portion of the rent paid in advance for the period subsequent to the destruction of the building, is a question not now before us.

The questions as to the form of the action, &c. discussed in the argument for the defendant, it has become unnecessary to consider, as the defence is well maintained upon the broader ground we have already stated.

*New trial granted.*