[No. 12701.   Department One.— October 23, 1890.]

H. L. TATUM ET AL., APPELLANTS, *v.* R. R. THOMP-    <span>86   203</span>
SON, RESPONDENT.    <span>102  480</span>

LANDLORD AND TENANT — LEASE — COVENANT TO REPAIR — FIRE — TENANT-
ABLE CONDITION OF PREMISES — DAMAGES — WAIVER — ELECTION OF
TENANT. — Under a lease of premises, providing that if by reason of fire
the premises should become untenantable no rent should be charged or
paid until they should be made tenantable by the lessor, lessees who remain
in possession of the premises after a fire, without any indication of in-
tention to remove, and regularly and promptly pay the usual rent with-
out objection, and who give no notice to the lessor to repair, or of their
intention to make repairs, elect to treat the premises as tenantable, and
cannot recover for damages sustained by water, caused by failure of the
lessors to repair the roof of the premises, which was partially destroyed
by the fire.

ID. — CONSTRUCTION OF COVENANT — DUTY OF LESSOR — RIGHTS OF LES-
SEES. — Such covenant does not change the statutory duty of the lessor
as to repairs, though it suspends the right to collect rent pending repairs,
and gives the lessees the right either to remain in possession without
paying rent, or to remove and remain out of possession until the repairs
are completed, and then resume possession at the stipulated rental.

ID. — DUTY OF LESSOR TO REPAIR — NOTICE BY LESSEE. — If the premises
become unfit for the occupation for which they were demised, from a
cause not occasioned by the ordinary negligence of the lessee, it is the
duty of the lessor to repair within a reasonable time after notice from
the lessee; and such notice is necessary to put the lessor in default, or
to authorize the lessee to repair to the extent of one month's rent, or to
vacate the premises.

ID. — EVIDENCE — REPAIRS — REASONS FOR LESSEES' REMAINING IN POS-
SESSION. — When the court has admitted all the evidence offered by
either party as to all that was said and done touching the subject-matter
of repairs, it is not error to refuse evidence as to the reasons why the
lessees remained in possession, or as to the effect of what was said and
done upon the minds of the lessees.

ID. — FINDINGS — TENANTABLE CONDITION — ELECTION OF LESSEES — PAY-
MENT OF RENT. — A finding that the lessees, by the payment of rent,
elected to consider the premises not untenantable, and that they were
not untenantable as to them, is sustained by the evidence, if it shows
that they remained in possession after a fire, and continued to occupy
them and conduct their business and pay rent as usual, without claim
that the premises were untenantable, or notice to the lessor to repair.

ID. — DEMAND FOR RENT AFTER FIRE — IMPLIED WARRANTY. — The de-
mand for rent after the injury of the demised premised by fire does not
constitute an implied warranty that the premises are not untenantable,
and does not affect the statutory duty or liability of the lessor to make
repairs when and only when he is notified to do so by the lessees.

ID. — REPAIRS — LIMIT OF LIABILITY OF LESSOR. — The limit of the lia-
    bility of the lessor after notice to repair is the right of the lessee to ter-
    minate the lease, or at his option to make repairs to the extent of one
    month's rent, and deduct the cost thereof from the rent.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco, and from an order
denying a new trial.

The facts are stated in the opinion of the court.

*Langhorne & Miller,* for Appellants.

*Mesick & Maxwell,* for Respondent.

FOX, J. — Appellants were tenants of respondent, occu-
pying the first floor and basement of the building num-
bers 25 to 31 Main Street, San Francisco, under a written
lease, paying a monthly rent of $450 per month, monthly
in advance. The rent fell due on the 5th of each month.
On the 5th of August, 1884, the rent for the next suc-
ceeding month was demanded and paid in advance, in
due and regular course of business. The lease contained
the following clause: " It is mutually agreed that if, by
reason of fire, the premises herein leased shall become
untenantable, no rent shall be charged or paid until they
are made tenantable by the party of the first part [the
lessor.] " On the 5th of August, and after the rent fall-
ing due on that day had been paid, a fire consumed the
roof of the building, and the two stories above the prem-
ises leased to the plaintiffs. It did not reach plaintiff's
premises, except to burn out in several places the floor-
ing of the premises immediately over them, thus render-
ing them subject to the falling in upon them of *débris*
and cinders from the floor above. They were, however,
liable to become further untenantable by reason of rains
likely to occur, and the first of which did occur on the
12th of October following. On the 18th of September,
defendant commenced the repair of the building, and
put a ceiling in plaintiffs' premises to protect them from

the falling *débris*, and the floor immediately above was tongued and grooved, and the joints laid in white lead, with the idea that it would, "in some measure," protect plaintiff's premises from any rain that might intervene before the roof was completed. Plaintiffs did not elect to treat the place as untenantable for their use, or either move out, or refuse to pay rent, but remained there, without any indication of intention to move; and regularly, on the 5th of each month, the collector called as usual for the rent, and they as regularly paid it.

They allege in their complaint: "That immediately after said fire, the defendant informed and promised plaintiffs that he would at once commence and set about repairing said building, and would thoroughly repair the same, and put it in a good, safe, and tenantable condition; that these plaintiffs, relying upon the defendant's duty as well as also upon his promise to repair said building, and put it in good, safe, and tenantable condition, remained in and continued to occupy said demised premises with their goods, wares, and merchandise, as aforesaid, and paid the rent as provided in said indenture of lease, up to the commencement of this action."

The evidence does not support this averment. On it the court found against the plaintiffs; and the testimony, even that given by the plaintiffs and their manager, justifies the finding. There was no duty devolving upon the defendant, by reason of the clause in the lease above quoted, to repair promptly, or at all. Whatever duty there was resting upon the defendant to repair (assuming that the premises had become unfit for the occupation for which they were demised) was that growing out of the provisions of the statute. (Civ. Code, secs. 1941, 1942.) Under these provisions, if the premises had become unfit for the occupation for which they were demised, from a cause not occasioned by the ordinary negligence of the lessee, it was the duty of the lessor to repair, within a reasonable time after notice from the

lessee; and if he failed to do so, the lessee had the right to vacate the premises, and would thereupon be discharged from further payment of rent; or he might at his option, after such notice and failure to repair within a reasonable time, himself make the repairs, if they did not require an expenditure greater than one month's rent, and deduct the amount of such expenditure from the rent. (*Van Every* v. *Ogg*, 59 Cal. 563.)

The evident purpose of the clause of the lease which we have quoted was to change in some measure the rights of the parties under this statute; but it did not change the duty of the lessor in the premises, so far as relates to the making of repairs. It certainly suspended his right to collect, or the duty of the lessees to pay rent, pending repairs. In our judgment, it gave the lessees the right either to remain in the possession of the premises, making such use of them as they could, pending repairs, without the payment of rent for such period as the premises remained out of repair, or at their option they could move out and remain until the repairs were completed, and then return and continue to occupy the premises at the stipulated rental for the balance of the term of the demise. They did not do either, but continued to occupy the premises, and regularly to pay the rent, as if no repairs were required. They did not even notify the defendant to repair, and therefore never put him in default under the statute. They had some talk with the defendant about the repairs, in which he told them that he was in no hurry about the matter, that he did not wish to commence until the loss was adjusted with the insurers, and in which they requested that in making repairs some things should be done which he was not required to do, — putting the premises in better condition than they were before, — of which the ceiling was one. These were made as requested. But the repairs did not commence until about the 18th of September, and on the 12th of October, the roof not yet being on, a rain came,

and defendants were damaged by water. This action is to recover for the damages thus sustained. Judgment went for defendant, and from this, and an order denying plaintiffs' motion for new trial, this appeal is taken.

1. Three errors are assigned on the rulings of the court in rejecting certain testimony offered by plaintiffs: 1. That the court erred in not permitting the plaintiffs to testify as to why they remained in the demised premises after the fire; 2. That the court erred in not permitting plaintiffs to testify as to whether or not defendant had said or had done anything that induced them to believe that he would make the premises tenantable; 3. That the court erred in not permitting plaintiffs to testify as to whether or not they remained in the premises, after the fire, until the time of the rain, by reason of any promise made by defendant in regard to repairing the building. The court admitted and received all the testimony that was offered by either party as to all that was said and all that was done by any and every of the parties, or their agents or representatives, touching the subject-matter of repairs. This being done, the evidence as to what the effect of these things so said and done was upon the minds of plaintiffs was wholly incompetent and inadmissible, and it was not error to reject it. Cases are triable by the proof of facts, not of the thoughts of men.

2. Appellants claim that "the finding of the court that at all times after August 5, 1884, the plaintiffs, by their acts and conduct, and by the payment of rent, elected to consider the premises not untenantable, . . . . and that the premises, by the fire of August 5, 1884, were not untenantable as to plaintiffs, is not supported by the evidence." We think the evidence fully supports this finding. The plaintiffs continued to occupy and conduct their business as if there had been no fire. There is nothing to show that they ever claimed that the premises were untenantable, or notified the defendant to repair, or took any steps to put him in default for not

repairing. If the premises had been rendered untenantable, then, by the express covenant of the lease, they were under no obligation to pay rent until repaired; but they paid promptly and regularly, without diminution or protest.

3. Appellants claim that "the evidence does not support the findings that from August 5 to October 12, 1884, was not ample or reasonable time for putting the premises in a safe or tenantable condition, and that there was no failure or neglect on the part of defendant in putting the demised premises in a safe or tenantable condition." The argument in support of this proposition is based upon the idea that the demand for rent after the fire operated as an implied warranty that the premises were not untenantable, and cites the case of *Roussinet* v. *Rebout*, 76 Cal. 454, in support thereof. That case is hardly in point. There certain premises were leased for the purposes of a nursery for plants. On the premises were fifteen orange-trees, the care and product of which were reserved by the lessor, who covenanted that "the care given to the orange-trees must not cause any harm to the plants raised by the tenant." It was shown that, by means of the care given to the orange-trees, the plants of the lessee were destroyed, and the lessor was held liable therefor. This liability was for damages resulting from the direct act of the lessor, done in violation of his covenant, not for injuries resulting from causes over which he had no control, and against which he was not bound to protect the lessee. As already stated, this special provision of the lease did not bind the lessor to repair at all. Under the statute, he was bound to repair only upon notice from the tenant, and if he then failed to do it, the limit of his liability was the right of the lessee to terminate the lease, or, at his option, to make the repairs to the extent of one month's rent, and deduct the cost thereof from the rent. (*Van Every* v. *Ogg*, 59 Cal. 563.) Neither did the

covenant in the lease amount to a warranty of anything except that if the premises were untenantable the lessee should not be required to pay rent. In regular course of business, the collector called for the rent. If the plaintiffs deemed the premises untenantable, it was their duty to say so, and refuse to pay the rent. But, instead of that, they promptly paid, without objection or protest, thus in the most emphatic terms assenting to the proposition that they had not become unfit for the purpose for which they were rented. Neither did they take any measures to assert their rights under the statute, but they remained in possession, and gave no notice to repair, or of intention themselves to make repairs.

The other cases cited by appellant are even less in point. They are generally cases where the landlord had undertaken permanent repairs on his own account, where no rights were reserved to the tenant by reason thereof, and where the repairs were conducted in such a manner as that injury to the tenant resulted therefrom. The court found, in the same connection with this point, that the time from the date of the fire to the 12th of October was not ample or reasonable for the repair, refitting, and reconstruction of the building. On this point, and almost on this point alone, there was some conflict of testimony, but there was evidence to support the finding, and it cannot therefore be disturbed. There is evidence to support all the findings, and they support the judgment. No errors of law are assigned in the argument, except such as we have here considered. We think, with the court below, that the plaintiffs elected to treat the premises as not untenantable, and governed themselves accordingly, and that they cannot recover in this action.

Judgment and order affirmed.

WORKS, J., and PATERSON, J., concurred.