[*No.* 4133.]

## POST ET AL V. LANG.

1. LANDLORD AND TENANT—*Lease Construed.* Lease of a store-room. The lessees covenanted to keep the premises in repair, and at the expiration of the lease to surrender them ''in as good order and condition as when entered upon, loss by fire, inevitable accident, or ordinary wear excepted.'' It was further provided that if the premises should ''become untenantable by reason of fire or otherwise, the rent should cease while the same were being repaired.'' *Held,* that the words ''or otherwise'' are to be taken in a limited sense, conforming to that which precedes; that the clause providing for a suspension of the rent refers only to such an injury to the premises as comes fairly within the provision relieving the tenant from the burden of repairs. (274.)

2. —— *Tenant's Right to Surrender—Waiver.* Where, under the terms of the lease, the tenant is entitled to surrender, if the premises become untenantable, he must act promptly, and vacate the premises without unnecessary delay. Failing in this, he waives his right. (276.)

The tenants quit the premises, before the expiration of the term, alleging their untenantable condition, and invoking a provision of the lease which they claimed entitled them to surrender. But it appeared that after the injury to which they attributed the untenantable condition they made repairs, and continued in occupancy for more than three months, conducting their business as before, and manifesting no intention to surrender. They then began to remove, and continued moving for several weeks, during all this time voluntarily paying the rent, as it matured. *Held*, they had waived their right to surrender. (278.)

3   TRIAL—*Discharging Jury.* Where it is manifest from the evidence that the defendant entirely fails in his defense the court may discharge the jury and itself find the facts. (271, 278.)

*Error to Denver District Court.* HON. H. P. BURKE, Judge.

MR. JOHN C. MURRAY, MR. HIRAM D. INGERSOLL, MR. H. WENDELL STEPHENS, for plaintiffs in error.

MR. H. E. LUTHE, MR. CHARLES R. BELL, for defendant in error.

HURLBUT, J., rendered the opinion of the court.

Suit begun January 16, 1913, by filing complaint on behalf of plaintiff (defendant in error) against defendants (plaintiffs in error), thereby seeking to recover for two month's rent, at the rate of $210 per month. In this opinion we will refer to the parties as plaintiff and defendants as they appear in the original complaint.

At the close of the trial the court took the case from the jury and rendered judgment in favor of plaintiff for the full amount claimed, to which ruling exceptions were taken, and the case removed to the Supreme Court by writ of error. By proper proceedings the case is before us for determination.

The action grows out of a written lease entered into between plaintiff and defendants on April 1, 1911. The lease was for three years, and among other covenants contained the following:

"(Lessees) to keep all the improvements upon said premises · * * * in good order and repair, and at the expiration of this lease to surrender and deliver· up the premises * * * in as good order and condition as when the same were entered upon, loss by fire, inevitable accident or ordinary wear excepted; * * * In case said premises shall become untentable by reason of fire or otherwise, the rents shall cease while the same are being repaired, but nothing herein contained shall be construed so as to compel the lessor to rebuild or repair said premises in case of destruction unless he so desires."

It is earnestly contended that grievous and fatal error was committed by the court in taking the case from the jury. Defendants also urge that the words "or otherwise," found in the paragraph quoted, must be construed as relieving them from the payment of rent under the lease, if it appears from the evidence that the premises became untenantable from any cause whatever, whether by fire, water or other agency. Plaintiff, on the other hand, contends that the phrase "or otherwise" must be given an *ejusdem generis* interpretation, and construed as referring only to a kindred casualty to that previously enumerated, to wit, fire, and that before defendants can be relieved from the payment of rent it must be shown that the untenantability of the premises was caused exclusively by fire, or some sudden catastrophe or event, equivalent in its nature to an act of God, but in no event could defendants escape liability for the payment of rent reserved, longer than the time consumed in making repairs, whatever be the cause of the damage.

Our Supreme Court, in the case of *Lewis v. Hughes*, 12 Colo., 208, 20 Pac., 621, has construed a lease containing a clause identical with the one we are now considering, with the exception that in that case the rent was to cease while the premises were being "rebuilt," while in the case at bar the term "repaired" is used in lieu of "rebuilt." The court found· that if the premises were rendered untentable, they

were only rendered so by reason of fire and smoke destroy-
ing the scenery and furnishings therein contained, and
reached the conclusion that such facts did not bring the
case within the terms of the lease relating to suspension
of rent, and held the tenant liable. The court said, in part:

"We think the clause relating to the suspension of rent
refers to such injury to the premises as cannot be required
(evidently meaning repaired), but necessitates a rebuilding
of the premises; and when we consider the covenants on
the part of the lessees to repair, with the provision relating
to the suspension of rent, it seems evident that such pro-
vision was intended solely tó relieve the lessees from their
common law liability to pay rent in case of the destruction
of the leased premises by fire. There is no evidence tending
to show a loss or destruction of the premises, or such an
injury thereto as would warrant the jury in finding as a
fact that the same could not be repaired, but, to be made
tenantable, must be rebuilt. The evidence shows conclu-
sively that if the premises were rendered untenantable by
the fire, it was on account of the injury to the scenery and
the furnishings, and from the effect of the smoke and water
in rendering the occupancy of the premises unpleasant; and
we do not think such evidence brings the case within the
terms of the lease relating to the suspension of the rent."

This case is cited in Underhill on Landlord and Tenant,
vol. 2, sec. 792, in support of the following statement made
by the author, to wit:

"A provision in a lease that rent shall cease if the
premises are destroyed, or that rent shall cease if they shall
become untenantable by fire, means a substantial destruction
and a permanently untenantable condition, rendering fur-
ther occupancy impossible, and necessitating not merely re-
pairs, but rebuilding. Mere damage by smoke or water,
rendering the occupation of the tenant unpleasant and in-
convenient, is not sufficient to bring the case under the
stipulation."

It will be observed in the *Lewis* case that the construction of the lease was affected to a considerable extent by the word "rebuilt," which of itself necessarily implied a total destruction, or such destruction as would require rebuilding. The word "repaired," in the lease before us, does not necessarily imply destruction *in toto,* but only such damage to the building as would necessitate repairs to the extent of making it tenantable again after the injury. In our judgment, a reasonable construction of the phrase "or otherwise," as found in the present lease, taken in connection with other covenants and provisos, would be that defendants are not entitled to a suspension of rent for a longer period than would appear necessary from the evidence to make the repairs, whether the same be made by the lessees or owner. In the instant case the language used in the lease readily bears the interpretation given it by the trial court, and that is generally given by the courts to the same or similar provisions, and by our own Supreme Court in *Lewis v. Hughes, supra.* By the specific provisions of the lease the premises are to be kept in good repair by the tenant, and so delivered at the expiration of the term, except as to loss occasioned by fire, inevitable accident or ordinary wear. But if, by reason of fire or otherwise, the premises become untenantable, all payments of rentals are suspended while the premises are being made tenantable. Notwithstanding the use of the phrase "or otherwise," we think the clause relating to the suspension of rent refers only to such loss or injury to the premises as comes fairly within the meaning of the words which relieve the tenant from the burden of making the repairs, as well as of the word "destruction," which relieves the landlord from the duty or liability to rebuild or repair the premises so as to make them tenantable, unless he so elects. The phrase "or otherwise" is given such limited meaning in *Lewis v. Hughes,* and that question may be regarded as *stare decisis* in this jurisdiction.

No contention is made that the premises were rendered untenantable by reason of fire, or ordinary wear, and there is no evidence that they became untenantable by reason of any act or force classified as "inevitable accident;" consequently the decisive question was one of interpretation of the lease, and not one of fact to be determined from conflicting evidence, and the court did not err in withdrawing the case from the consideration of the jury.

The words "or otherwise," used in leasing contracts, have been repeatedly interpreted as to their meaning and effect by the various appellate courts as well as by text writers. The following is quoted from Vol. 6, Words and Phrases, page 5105, viz.:

"The words 'or otherwise,' in law, when used as a general phrase following an enumeration of particulars, are commonly interpreted in a restricted sense, as referring to such other matters as are kindred to the classes before mentioned. Cent. Dict. The phrase 'or otherwise,' when following an enumeration, should receive an *ejusdem generis* interpretation."

In the case of *Jewel Tea Co. v. Watkins,* 26 Colo. App., 494, 145 Pac., 719, this court had under consideration a question similar to the one which now confronts us. The court determined the effect of the words "or other merchandise," immediately following the enumeration "teas, coffees, baking powder, extracts, spices, cocoa," and held that the general expression "or other merchandise" was confined to articles or goods kindred in nature to those previously enumerated. Presiding Judge Cunningham, who wrote the opinion, reviewed the authorities at some length, showing the conclusions of the court to be well sustained by the general current of authority. *Sims v. U. S. Trust Co. of New York,* 103 N. Y., 472, 9 N. E., 605; *Wallace v. Jones,* 83 N. Y., 152, 82 N. Y. Supp., 449; *Lowenstein v. Fidelity & Casualty Co. of New York* (C. C.), 88 Fed., 474.

The trial court properly found that the evidence failed to show whether the water causing the damage to the premises was the result of an ordinary rain, or of one unprecedented in its nature. It is of no importance, however, whether the rain was an ordinary or extraordinary one, as defendants, neither in their pleadings nor at the trial, made, nor do they now make, any claim for rebate of rent during the time the repairs were being made; from which fact we presume they elected to waive that claim and stand solely upon their asserted right of exemption from payment of any and all rent, subsequent to the time they vacated the premises, on November 30, 1912. The evidence is undisputed that within a brief period following the flood defendants, of their own volition, repaired the premises damaged, collected the greater part of the expense from plaintiff, and then continued to occupy the premises without interruption for four and a half months thereafter, when they vacated, and moved into a building of their own. The fact that defendants made the repairs at plaintiff's expense (though temporary, as they claim) and occupied the building for four and a half months thereafter, tends to negative defendants' contention that the building during that period was unsafe and untenantable. There is no evidence whatever to show that the building was unsafe or untenantable at the time defendants moved out.

It seems to be well settled in law that if a tenant has the right to declare a lease forfeited, and vacate the leased premises, under a covenant similar to the one we are now considering, and elects to do so, he must act promptly, and vacate without unnecessary delay. After the damage done, he cannot remain in the occupancy of the premises for such a length of time as suits his convenience, and then vacate, in reliance upon the covenant. If he fails to act with reasonable diligence in the premises, he waives such right. Defendants contend that under the circumstances the four and a half months' period of occupancy of the building by them

was a reasonable time in which they might exercise their option to terminate the lease and surrender possession, and that such question should be left to the jury. We are of the opinion that if all the evidence be considered together it clearly established a waiver on their part to take advantage of the covenant.

In *Tatum v. Thompson,* 86 Cal., 203, 24 Pac., 1009, the court had under consideration a clause to the effect that if the premises became untenantable by reason of fire, no rent should be charged or paid until the same were made tenantable again by the lessor. On August 5, 1884, the roof of the building was partially destroyed by fire, but the tenant remained in the premises until October 12th, paying the rent which accrued during that period. There was nothing in the evidence to indicate that the tenant intended to move out on account of the damaged condition of the premises, nor was any notice given to the lessor to repair the same. Under such circumstances the court held that the tenant elected to treat the premises as tenantable, and could not recover damages sustained by water coming through the damaged roof. The court said, in part:

"Plaintiffs did not elect to treat the place as untentable for their use, or either move out, or refuse to pay rent, but remained there, without any indication of intention to move; and regularly, on the 5th of each month, the collector called as usual for the rent, and they as regularly paid it. * * * The plaintiffs continued to occupy and conduct their business as if there had been no fire. There is nothing to show that they ever claimed that the premises were untenantable, or notified the defendant to repair, or took any steps to put him in default for not repairing. * * * We think, with the court below, that the plaintiffs elected to treat the premises as not untenantable, and governed themselves accordingly, and that they cannot recover in this. action."

To the same effect, *Kiernan v. Germain,* 61 Miss., 498, and *Roach v. Peterson,* 47 Minn., 462, 50 N. W., 601. The facts in the California case and the case at bar are quite similar. In the instant case defendants remained in possession of the building for over three months after the damage was done, conducting their business as before the injury, before they indicated any intention of vacating the premises. They then began to move, and continued moving for several weeks thereafter, until they finally surrendered possession on November 30th, all the time voluntarily paying the rent as it became due. Neither at the time of paying the rent, nor at any other time, did they notify plaintiff to repair, or that any other repairs were necessary than those already made by them. There is nothing in the abstract of record showing that the premises were untenantable during the four and a half months mentioned.

In the case at bar the facts relative to defendants' repair of the premises shortly after the damage done thereto, and their continued occupancy thereafter for four and a half months, as above shown, which are undisputed, sufficiently show a waiver on their part of the right to claim the premises were unsafe or untenantable by reason of the damage caused by the water, and the court was warranted in refusing to submit the question to the jury.

Other points discussed in the briefs need not be further noticed, as we are satisfied a determination thereof would not result in changing the conclusions we have already reached. As the record appears, the judgment was right, and should be affirmed.

*Judgment Affirmed.*

Decided April 12, A. D. 1915. Rehearing denied May 10, A. D. 1915.