## MARIETTA HELLER v. ROYAL INSURANCE CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 20, 1890—Decided March 10, 1890.
[To be reported.]

1. When a landlord, after the destruction of a leased building by fire, enters with the consent of the tenant for the purpose of rebuilding, such entry operates as a rescission pro tanto of the lease, suspending the payment of rent; and the legal effect of such entry cannot be altered by the agreement of the parties, to the prejudice of a third person, without his consent.

(a) The tenant of a building held a policy of insurance against liability for rent during such times as the building might be untenantable in consequence of fire. The building being destroyed by fire, the landlord agreed to rebuild and grant a new lease, and the tenant agreed that his entry to rebuild should not be considered an eviction or surrender, but that rent should be paid under the original lease during the rebuilding:

2. The entry of the landlord, under such agreement, discharged the tenant's insurer from liability to indemnify him for the payment of rent after the date of the entry, even though the agreement was made without any fraudulent purpose, as its effect, if binding upon the insurance company, would be to continue upon the company an obligation from which the law relieved it.

3. Such a defence was not waived by a letter from the insurer, after the fire, in response to a request of the tenant for its consent to the making of such an agreement, promising not to claim a discharge from its liability " by reason of the landlord entering for the purpose of rebuilding," but declining to be a party to any agreement preventing the suspension of rent during the time of rebuilding.

Statement of Facts.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 48 July Term 1888, Sup. Ct.; court below, No. 551 December Term 1888, C. P. No. 4.

On February 2, 1889, Marietta Heller brought assumpsit against the Royal Insurance Company of Liverpool upon a policy of insurance issued by the defendant company, filing a statement of claim averring in substance as follows:

By a written lease, Thomas K. Peterson, trustee, demised to the plaintiff certain communicating buildings in Philadelphia, for the term of three years from the first day of January, 1888, at the rent of $8,500 per annum, payable in monthly instalments. The defendant company, by a policy which was in force on January 23, 1888, insured the plaintiff in the sum of $6,000, on her interest as lessee of said buildings, the policy providing as follows : " It being understood that this policy is to indemnify the assured for any loss accruing to her by reason of having to pay rent for the within described building such time or times as the building may be untenantable by reason of fire or fires occurring during the continuance of this policy. Loss not to be limited by date of expiration of the policy; it being understood that the sum insured is the annual rental of the property, and the amount of loss is to be computed on that basis."

On January 23, 1888, said buildings were totally destroyed by fire, of which the defendant had immediate notice; and, on April 16, 1888, the plaintiff, through her attorney, requested the defendant to agree that the plaintiff's landlord might enter on said premises, with her consent, for the purpose of rebuilding, and that such entry should not impair the liability of the defendant under its policy. The defendant, through its attorney, replied to this request as follows: " Dear Sir : The Royal Insurance Company could not be discharged from liability on Mrs. Heller's policy, by reason of the landlord entering for the purpose of rebuilding, nor will such a defence be raised. But they decline to be parties to any agreement that the landlord shall be permitted with their consent to rebuild, the only effect of which would be to prevent a suspension of the rent during the time of rebuilding. The landlord has the right

to do so, unless your client prevents him. If Mrs. Heller does prevent the rebuilding, the Royal will certainly claim that if the loss is increased by such action on her part, it will fall on herself alone."

On July 24, 1888, the plaintiff entered into a written agreement with her landlord, providing that the landlord should construct a new building in place of the ones destroyed by fire, and upon its completion grant to the plaintiff a lease thereof for five years at the annual rent of $17,000, the agreement containing the following provisions:

" 3. Nothing herein contained is to affect the rights and liabilities of either party for payment of rent or otherwise, under the existing lease until the new building is completed and ready for occupancy, and the entry of the landlord for the purpose of rebuilding in accordance with this agreement shall not be construed to be an eviction by him or a surrender by the tenant.

" 4. The respective parties reserve their rights against the respective insurance companies under the policy of insurance which each holds for rent, and nothing herein contained shall be construed as affecting the rights of either party to recover on his or her policy of insurance against each of said companies."

On January 31, 1889, the defendant paid to the plaintiff $3,096.50, as the admitted loss under said policy, being the rent of the insured premises from the date of the fire until the commencement of rebuilding by the landlord, July 24, 1888, with interest from the date last named, said amount being received and paid without prejudice to the right of the plaintiff to claim, or of the defendant to defend, for any balance of the sum insured under said policy. The plaintiff paid to her landlord the rent of said premises for the year insured under the policy, and more than a year had elapsed, after said fire, without said premises having been restored or rendered tenantable, by reason whereof the plaintiff claimed from the defendant the amount paid for rent from July 23, 1888, until January 23, 1889.

The defendant filed an affidavit of defence, averring that the plaintiff's landlord was fully insured against loss of his rents by fire under a policy issued by the Pennsylvania Fire Insurance Company, which contained an agreement that the assured

would rebuild or repair the premises in as short a time as possible after the occurrence of a fire, but in case he should elect not to do so, the loss of rent should be determined by the time which would have been required for such purpose; that the defendant was ready and offered to adjust the loss between the two policies, but the Pennsylvania Fire Insurance Company, claiming a right of subrogation to the landlord's claim for rent against the tenant, who was insured under the policy of the Royal Insurance Company, induced and procured the landlord not to re-enter on the premises for the purpose of rebuilding, contrary to the express terms of their policy, unless with such an assent of the tenant as would continue her liability for rent, as otherwise such re-entry by the law of Pennsylvania would work a suspension of the rent and relieve the lessee of liability during the time of such rebuilding, and thereby diminish the claim of the Pennsylvania Fire Insurance Company arising by subrogation against the tenant; that in order to relieve the insurers of the landlord from liability under their policy, Mrs. Heller's assent was obtained to the proposed plan, by which the rent should continue to be paid by her while the landlord was rebuilding on the terms set forth in the contract of July 24, 1888, which was entered into at the instigation and with the assistance of the Pennsylvania Fire Insurance Company, and on that day the landlord entered on the premises for the purpose of rebuilding; that the agreement to pay rent while the new building was being erected was a part of the consideration for the new arrangement of the plaintiff with her landlord, by which she received a lease of a building to be erected very superior to that rented under her former lease, for a longer time and on more favorable terms, and she thus derived an advantage corresponding and equivalent to the rent which she voluntarily assumed to pay while she was deprived of the use of the premises; that as a part of the arrangement the sum of $2,000 was paid to the landlord by his insurers, of which the plaintiff has received the benefit; that the result contemplated by this arrangement was that the insurers of the landlord's rent,—whose liability for such loss extended under the words of their policy over the whole term while the landlord was rebuilding, without any right of reclamation against the tenant while the rent was suspended, in consideration of a donation

of $2,000, nominally paid to the landlord who had suffered no loss,—should escape all liability by reason of the fire, and the tenant should seek in this suit to recover from her insurers, the rent during the same period of which she would have been relieved by the entry of the landlord to rebuild, and which would have been otherwise paid by the landlord's insurers, so that the latter's insurers should be relieved at the expense of those of the former; and that the agreement of July 24, 1888, between the plaintiff and her landlord, was made without the knowledge of the defendant.

The plaintiff having taken a rule for judgment for want of a sufficient affidavit of defence, the court after argument, without opinion filed, entered judgment for the plaintiff for $3,088.50. Thereupon the defendant took this appeal, specifying that the court erred:

1. In entering judgment against the defendant.

*Mr. Morton P. Henry*, for the appellant:

1. Fire insurance is, in the strictest sense, a contract of indemnity: 1 Phillips on Insurance, § 4; Porter on Insurance, 6; Marshall on Insurance, 1; Wood on Fire Insurance, 4, note 2. It falls in the same category as suretyship: Hall v. Railroad Co., 13 Wall. 367. It is so purely a contract of indemnity that reparation of the loss by a third party destroys all claim upon the policy: Darrell v. Tibbitts, L. R. 5 Q. B. 550; Friemansdorf v. Insurance Co., 1 Fed. R. 68. Upon these principles is founded the doctrine of subrogation of the insurer to the remedies of the insured against third parties which is recognized in Pennsylvania: Smith v. Insurance Co., 17 Pa. 253; Thornton v. Insurance Co., 71 Pa. 234; Insurance Co. v. Updegraff, 21 Pa. 513. From them it follows that it is the duty of the insured to mitigate the loss: Wood on Fire Insurance, 776; and a release by him of any right of action to which the insurer would be entitled to subrogation, discharges the insurer: Atlantic Ins. Co. v. Storrow, 5 Paige Ch. 285; Niagara F. Ins. Co. v. Fidelity etc. Co., 123 Pa. 516; Insurance Co. of N. A. v. Fidelity etc. Co., 123 Pa. 523; Carstairs v. Insurance Co., 18 Fed. R. 473. The insurer's liability, like that of a surety, cannot be enlarged without his consent:

Arguments.

Crawley v. Commonwealth, 123 Pa. 275. If the insured hinder another from saving his property, the loss will fall on himself: Porter on Insurance, 10.

2. These principles are self-evident and apply to the present case, in which the policy was a contract to indemnify against loss by reason of having to pay rent while the premises might be untenantable. The question presented is, did the plaintiff "have to pay rent," or did she pay it voluntarily? An entry by a landlord to rebuild, after a fire, if made without the tenant's consent, is an eviction; if with such consent, it is a rescission of the lease; and in either case the tenant's liability for rent at once ceases: Magaw v. Lambert, 3 Pa. 444; Hoeveler v. Fleming, 91 Pa. 322; Ex parte Vitole, 47 L. T. R. 450. The landlord's entry suspends rent so long as the tenant remains evicted: Platt on Covenants, 197. It was in reference to this rule of the law of Pennsylvania that both the landlord and the tenant insured the rent in this case; the latter, because she would remain liable for rent after a fire until the commencement of rebuilding, and the former because her liability would cease as soon as rebuilding was commenced, and his insurance would then become effective for his protection.

3. If the landlord did not intend to rebuild, there was no necessity for his insuring the rent, as such insurance does not protect against the insolvency of the tenant, and no loss is adjustable on the policy so long as rent is collectible under the lease: Excelsior F. Ins. Co. v. Royal Ins. Co., 55 N. Y. 343 (14 Am. Rep. 271). Moreover, it was not to his interest to depreciate the value of his property, as a place of business, by leaving it in ruins for the remainder of the plaintiff's term. He would not needlessly injure his tenant by exacting from her the continued payment of rent for a heap of ruins, without at the same time injuring himself. Therefore, when she agreed to continue to pay rent after July 24, 1888, it was a voluntary act, by which she assumed a continuing liability after the time when the law relieved her. Under decisions already cited, her agreement, in consideration of a voluntary donation from the landlord's insurer, and a more valuable lease from the landlord, to extend her liability in order to exonerate the landlord's insurer, was inconsistent with the contract of indemnity between the defendant and herself, and

cannot extend the defendant's liability. The words of the agreement, stipulating that the liability for rent should continue under the existing lease, are unimportant, since it was only by virtue of the new agreement that the rent continued payable. The whole transaction was an attempt to create a fictitious loss.

*Mr. M. Hampton Todd*, for the appellee:

1. It is manifest that if the plaintiff had not permitted the landlord to rebuild within a year after the fire, the defendant would be liable for the full amount of its policy. But her insurance would then have availed her nothing, as she was liable for three years' rent and would have had to pay rent while the landlord was rebuilding after the expiration of the year. The reply of the defendant, when asked to consent to the landlord's rebuilding without prejudice to its liability upon the policy, although refusing to agree in words to the plaintiff's proposition, nevertheless means, if it mean anything, that she must permit the rebuilding, if the landlord desires it, and informs her that the defence of re-entry will not be raised. Now, after she has complied with the notice, she is told that she must lose her insurance, although the only terms on which she could get the landlord to rebuild were that her covenant to pay rent should not be impaired thereby. Such a defence cannot be set up in this action.

2. The proposition that an entry by the landlord with the assent of the tenant operates as an eviction, is a contradiction in terms. Magaw v. Lambert, 3 Pa. 444, and Hoeveler v. Fleming, 91 Pa. 322, cited by the appellant, were cases of entry without such consent, and are authorities for, rather than against us. The plaintiff was not in a position to haggle about terms with her landlord, and did not owe her insurer any duty to do so. By her agreement no one was discharged from liability, and the rights of all parties respecting insurance were expressly reserved; therefore, that agreement did not discharge the defendant: Hagey v. Hill, 75 Pa. 108; Niagara Ins. Co. v. Fidelity etc. Co., 123 Pa. 516. Whatever rights the defendant may have against the landlord or his insurer are still open to it, but before the defendant can set up any such rights, it must pay the plaintiff the amount of her loss: Insurance Co. of N. A. v. Fidelity etc. Co., 123 Pa. 523.

3. But the relation of the landlord to the insurer cannot affect the liability of the defendant upon its own policy. The two policies insured different liabilities. The tenant continued liable for rent after the fire : Bussman v. Ganster, 72 Pa. 285 ; and so long as she paid it, the landlord had no claim against his insurer. If she had refused to pay it, the landlord's insurer, on paying him, would have been subrogated to his rights and could have collected rent from the tenant: Porter on Insurance, 60, 66, 67, 251 ; May on Insurance, §§ 456 et seq. ; Wood on Fire Insurance, 1072 ; Darrell v. Tibbetts, L. R. 5 Q. B. 560 ; North British Ins. Co. v. London Ins. Co., L. R. 5 Ch. Div. 569. But whether this be so or not, it was competent for the landlord to assign his claim for rent to his insurer on receiving payment, and he doubtless would have done so. As a practical question, then, the plaintiff had to pay her rent, and having no defence she paid it. The two policies, however, really have nothing to do with each other.

4. It is not averred that the $2,000 mentioned in the affidavit of defence was paid on account of the tenant's liability for rent. But even if it were so, as that liability amounted to $8,500 per year, and the plaintiff's insurance amounted to but $6,000, she will be the loser to the extent of $500, after recovering in full on her policy. Another and conclusive answer to the defendant's position respecting the payment of the $2,000, is that the landlord was at liberty to make any settlement with his insurer that he saw fit. The only question in the case, therefore, is whether the tenant was liable for this rent ; if she was, the defendant is bound to indemnify her. The statement that the transaction was an attempt to create a fictitious loss, is gratuitous and unjustified. It is absurd to talk about the payment of this rent being voluntary, when a liability for three years, involving $25,000, stared the plaintiff in the face. Her agreement did not injure the defendant in any particular.

OPINION, Mr. JUSTICE MITCHELL :

The facts in this case, as they appear in the affidavit of defence and the plaintiff's statement, are practically undisputed, and they establish a complete defence. Defendant, by its policy, agreed to indemnify plaintiff for " any loss accruing to her by reason of having to pay rent for the (therein) described

building such time or times as the building may be untenantable by reason of fire or fires occurring during the continuance of this policy." A fire occurred in January, 1888, and the landlord entered to rebuild in July. That, as a legal consequence, would have suspended the payment of rent. It was a rescission pro tanto of the lease : Magaw v. Lambert, 3 Pa. 444 ; Hoeveler v. Fleming, 91 Pa. 322. Defendant was liable under its policy for the rent from January to July, and that amount it paid. But the plaintiff and her landlord entered into an agreement by which the former agreed to continue to pay rent during the rebuilding of the store, and, in consideration therefor, the latter agreed to rebuild with certain improvements, and to give a new lease on more favorable terms. This agreement discharged the defendant. The payment of rent under it by plaintiff was a voluntary undertaking, not a legal obligation under the first lease, against which alone the policy undertook to indemnify her. It is set out in the pleadings that the landlord was insured as to his rent in the Pennsylvania Fire Insurance Company, and that that company, asserting a right of subrogation to the landlord's claim for rent against the tenant, procured the landlord not to re-enter until the plaintiff made the agreement in question, and that by that agreement it was expressly stipulated that the rights and liabilities as to rent, and as to claims under their respective insurance policies, should not be affected. But these facts are entirely immaterial. If true, they showed a fraudulent attempt on part of the plaintiff, the landlord, and the Pennsylvania Fire Insurance Company, to shift a burden which belonged on them to the defendant. But, even if there was no such fraudulent purpose, the effect of the agreement was to continue upon the defendant an obligation from which the law relieved it, and no stipulation between the other parties, without its consent, could accomplish such a result.

It is said that the hardship of plaintiff's situation forced her to make the agreement, and that without it the landlord would not have re-entered, and the defendant would then have been liable for an entire year's rent. Perhaps so ; perhaps not. What the landlord would have done there are no means of ascertaining, but what it was his interest to do is clear enough. He might have lain by and collected his rent from plaintiff till

the end of her lease, but then he would have had to lose rent while he rebuilt; or, he might have rebuilt during her lease, and looked to his insurance for indemnity while the rent was suspended by the rebuilding. It was manifestly his interest, therefore, to enter and rebuild during the running of plaintiff's lease and his own policy in the Pennsylvania company. He had nothing to gain, and something to lose, by delay. The hardship in plaintiff's situation was in having an insufficient insurance. She was bound to pay rent for three years, and only indemnified for one. It was her interest, therefore, to have the rebuilding done as soon as possible. The honest and proper course for all parties would have been to rebuild at the earliest convenient time. The plaintiff would then have paid rent until the rebuilding commenced, and would have been indemnified by the defendant. The rent would have been suspended during the rebuilding, and the landlord would have been indemnified by the Pennsylvania company. No one had anything to gain by departing from this plain course, except the Pennsylvania company, which, if the scheme had succeeded, would have transferred its own proper loss to the defendant. But, when the parties undertook to vary the defendant's contract liability from that which the law imposed, their action was ineffective for such purpose, and as to the defendant totally void.

Reference was made during the argument to the correspondence, and a claim suggested that the present defence had been waived. But such a view is untenable. The meaning of the letter of defendant's counsel, dated April 17, 1888, is entirely clear. The defence which it says will not be raised is that defendant will be "discharged from liability by reason of the landlord entering for the purpose of rebuilding." Of course not. The fire had taken place in the preceding January, and nearly three months' rent was due at the date of the letter. From liability for this rent, and such other as should accrue up to the entry of the landlord, such entry would not be a discharge, and the letter says that such a defence will not be raised. But then, to make certain that its meaning is not more than this, it goes on to say explicitly that defendant will not consent to anything which will vary the legal effect of the landlord's entry, to wit, the suspension of the rent during the

Statement of Facts.

rebuilding. There is here no waiver of any of defendant's rights.

Judgment reversed, and procedendo awarded.