## Schomaker, Appellant, *v.* Heinz et al.

*Landlord and tenant—Leases—Exclusive possession—Condition of premises at execution of lease—Beginning of term—Change by landlord—Cancellation of lease.*

Upon the execution of a lease there is an implied warranty that the condition of the premises described in the lease shall remain the same between the time of the execution of the instrument and the beginning of the term.

30, (1921).]   Syllabus—Opinion of Court below.

Where a landlord rented a city property on which there was an old dwelling, and as a condition of the lease agreed to remove the same, but in addition allowed a third party to dump earth on the premises without the consent of the lessee, and thereby changed the character of the leasehold, he cannot recover in an action for the rent. If a material change has taken place in the character of the premises the tenant is not bound to take possession, as the premises tendered are not those described in the lease.

Argued April 26, 1921.  Appeal, No. 50, April T., 1921, by plaintiff, from judgment of C. P. Allegheny County, Oct. T., 1918, No. 264, for defendant in the case of F. W. Schomaker v. Clifford S. Heinz et al., executors of the estate of H. J. Heinz, deceased.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.  Affirmed.

Assumpsit to recover rental under a lease.  Before EVANS, J.

Verdict for defendant and judgment thereon.  Plaintiff appealed.

The facts are stated in the following opinion of the court below:

On the 26th of May, 1917, the plaintiff leased to the defendant a piece of land fronting about 25 feet on River Avenue, on the North Side, Pittsburgh, and extending back on one side 97.38 feet and on the other side 91.92 feet to East General Robinson Street, for the period of five years, at the annual rental of $220 a year, payable quarterly. The lot was described as a vacant lot, and the term began on the first of July following the execution of the lease. Under the terms of the lease the lessor agreed "to remove or cause to be removed at his own expense the building now located on said lot, on or before the first day of July." The plaintiff brings this suit to recover $220, the first year's rent. A few days after the execution of the lease, sometime between the 26th of May and the 7th of June, the defendant discovered that dirt was being dumped on the lot, and his agent, Mr. Brecht,

testified as follows as to two interviews he had with the plaintiff's agent in regard to the matter:

"Q. You say when this filling first began you called Mr. Heinz's attention to it?

"A. Yes, sir.

"Q. Did you ever take the matter up with Mr. Schomaker?

"A. Yes, sir.

"Q. Which Mr. Schomaker?

"A. The young man.

"Q. How did you take it up with him?

"A. Took it up with him by telephone at first.

"Q. What did you say to him?

"A. I told him that I noticed that there was some earth being dumped there, and that that was not in accordance with our understanding, and asked him to have them stop it, whoever was doing it.

"Q. What reply did he make?

"A. Well, he replied—I don't know whether it would be the first time or the second time I talked with him— but he made this reply: That when he made the lease arrangement with me, he was entirely unaware that his father had given anyone the privilege of filling that lot, and that therefore he didn't know what he was going to do about it."

He then testified that he took the matter up with Mr. Heinz's attorney, Mr. George M. Harton, and asked him to attend to the matter. On the 7th of June Mr. Harton wrote as follows to Mr. Schomaker:

"Dear Sir:

"On the 26th of May last you entered into a certain agreement with Mr. H. J. Heinz under the terms of which you leased to Mr. Heinz a certain vacant lot on River Avenue.

"This is to notify you that said lot is to be delivered to Mr. Heinz under the terms of the lease, which lease commences July 1st, 1917, in the same condition in which it was at the date of execution of the lease; and that

you will be required to remove from said lot all earth or other refuse that has been deposited thereon since the execution of said lease.

"You are further notified not to deposit, nor permit to be deposited, any additional dirt or refuse on said lot.

"(Signed)   GEO. M. HARTON."

On June 19th Mr. Harton wrote as follows to Mr. Schomaker:

"Dear Sir:

"Replying to your favor of the 12th inst., in re Heinz lease:

"You are given the option, first, of clearing the lot and restoring the same to the condition in which it was at the time when the lease was executed, or, second, of cancelling and annulling the lease. We are willing to do either, but must insist upon one or the other being done. I think you cannot fail to concede that our position is a fair and proper one, under the circumstances, and shall be glad to be advised by you which option you elect."

On the 29th of June Mr. Harton wrote to Mr. Schomaker as follows:

"Dear Sir:

"On the 19th inst. I wrote you in reply to your letter of the 12th, in re Heinz lease, giving you the option of clearing the lot and restoring the same to the condition in which it was at the time the lease was executed or of cancelling and annulling the lease, stating that we were willing to do either; but must insist upon one or the other being done, and asking for early advice as to which option you would elect. Having heard nothing from you and being now advised that you are still continuing to fill the lot, and that you have not cleared the same, I beg now to advise that by reason of your default in the matter at issue, Mr. Heinz being unable to take possession of the property July 1st, as contemplated by the lease, said lease is hereby repudiated."

The letter of June 12th from Schomaker to Harton was as follows:

"Dear Sir:

"In answer to your letter of June 7th. Our lease with Mr. Heinz only starts July 1st, 1917, because City of Pittsburgh notified us in April to remove house and fill up empty cellar and level lot which they called a fire trap.

"For this reason we deducted $100.00 off the $20.00 per month lease and made same $1100.00 for five years.

"We promise Mr. Heinz's representative to have property in shape by June 15th if possible, no agreement being made as to whether lot would be graded to level of Robinson St., on River avenue.

"So we are grading same gradually to each street level so same can be approached and driven into by wagon.                       "Very truly yours,

"SCHOMAKER AND CO.,
"Per W. S. SCHOMAKER (Sgd.)"

On the lot at the time the lease was executed was a frame house with a cellar under it, and under the terms of the lease the lessor was to remove the house, and that is the only provision in regard to the lot which the lease contains, and as will be seen by the last letter quoted, there was no verbal arrangement or instructions from Mr. Heinz to Schomaker as to the grading or the filling of the lot. The lot extended from River Avenue to Robinson Street, a distance of between ninety and ninety-five feet, and extended back nearly level with a slight grade until it came near to Robinson Street, when it arose very rapidly to Robinson Street, which was about twelve or fifteen feet higher than River Avenue. The plaintiff filled the lot on a grade from River Avenue to Robinson Street, and the average fill was about six feet. The plaintiff made a contract by which the old building was removed and the cellar filled up and all the filling made on the lot, and in consideration of the privilege of the dump and the salvage from the building, the contractor removed the building and filled to the level as heretofore stated, and in addition paid to the lessor some

sixty dollars.    We have stated that the son of the plaintiff, who transacted all the business with Mr. Heinz's agent for his father, had stated in an interview with the agent of Heinz that his father had made a contract for the removal of the building and for the privileges of the dump before the property was leased, and he didn't know what they were going to do about it.    We have stated that that is the fact for this reason: while it was not formally admitted, yet the witness with whom the conversation was had was in court at the time the testimony was given, and he failed to deny the interview with Mr. Brecht, and if he would not deny the effect of the interview, he could not ask the jury not to believe it. And the same is true with regard to the rambling testimony on the part of the son of the plaintiff as to what occurred between him and Heinz as to the filling of the lot.    In his letter of June 12th he states "no agreement being made as to whether lot would be graded to level of Robinson Street or River Avenue."    In fact there was no agreement to grade the lot at all.    There was a requirement in the lease that the building on the lot should be removed, and that was all.    In the case of Meeks v. Ring, 4 N. Y. S. 117, the court says: "Although there is no implied warranty in the letting of a house, that it shall be reasonably fit for habitation or any other purpose for which it is let, yet there is certainly an implied warranty that the condition of the premises remain substantially the same between the time of the execution of the lease and the beginning of the term.    If this is not the case, the landlord is not in a condition to tender for occupation that which is described in the lease and which has been hired.    Therefore, if any material change has taken place during this period, it is clear that the tenant is not bound to take possession, as the premises tendered are not those hired."

It seems to us that that law is sound in principle, and ruled by the principles laid down in that case, the plaintiff in the case at bar cannot recover.

And now, May 26, 1920, motion for new trial and rule for judgment for the plaintiff n. o. v. are refused, and judgment is hereby directed to be entered for the defendant on the verdict.

*Error assigned,* among others, was the refusal of plaintiff's motion for judgment non obstante veredicto.

*Harvey A. Miller,* of *Miller & Nesbit,* for appellant.

*William R. Scott,* and with him *Gordon & Smith,* for appellee.

OPINION BY ORLADY, P. J., July 14, 1921:

The question involved, as submitted by the appellant is as follows:

"Was there a disputed question of fact under the pleadings and evidence requiring this case to be submitted to the jury."

The trial judge directed the jury that there was no fact in dispute for them to determine, and that the defendant was entitled to a verdict. On a motion for a new trial, and for judgment non obstante veredicto, the court in banc in an opinion filed refused the motions and directed judgment to be entered on the verdict.

This opinion disposes of every question raised by the assignment, and for the reasons therein given the judgment is affirmed.