SOLOMON v. NEISNER BROS., Inc.

No. 3289.

United States District Court
M. D. Pennsylvania.

Oct. 3, 1950.

312

Herman J. Goldberg, Wilkes-Barre, Pa., for plaintiff.

Paul Bedford (of Bedford, Waller, Jones & Darling), Wilkes-Barre, Pa., for defendant.

MURPHY, District Judge.

In this diversity action plaintiff seeks compensatory and punitive damages for alleged breach of a written lease. Defendant moves to dismiss, asserting failure to state a claim upon which relief may be granted.

In the absence of anything to the contrary, we assume defendant drew the lease and that all operative facts occurred in Pennsylvania. We look to that law to determine the substantive rights and obligations of the parties [1] and to decide questions of interpretation and construction of the lease.[2] We do not write on a clean slate. We must act, in effect, as another

1. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

2. Rumsey v. N. Y. & P. R. Co., 1902, 203 Pa. 579, 585, 53 A. 495; Griffin v. Metal Product Co., 1919, 264 Pa. 254, 256, 107 A. 713; A. M. Webb & Co., Inc. v. Robt. P. Miller Co., 3 Cir., 157 F.2d 865, at page 866; Chicago Pneumatic Tool Co. v. Ziegler, 3 Cir., 1945, 151 F.2d 784, 789; Texas Motorcoaches, Inc. v. A. C. F. Motors Co., 3 Cir., 1946, 154 F.2d 91, at page 93.

court of that State. It is our duty to ascertain what the State law is; not what it ought to be.[3]

[■] In disposing of such a motion, we consider as true all well plead allegations of the complaint, but not conclusions of law or unwarranted deductions of fact;[4] viewing them in the light most favorable to the plaintiff, resolving all doubts in favor of sufficiency.[5]

The facts are as follows:

Defendant, a New York corporation, lessee of premises known as No. 41 to 49 South Main Street, Wilkes-Barre, consisting of a "building or buildings" covering the entire area, leased the premises situate at No. 49, consisting of a storeroom and basement[6] for a term of five years to the plaintiff, of Pennsylvania, for retail store purposes. By renewal the term was extended five years to April 30, 1947; and on February 17, 1947, for an additional two years from May 1, 1947 to April 30, 1949, at an annual rental of $8,000 payable in monthly installments.

Through no fault of either party, the "building or buildings" were totally destroyed by fire March 1, 1947.[7] Defendant showed plaintiff an outline of the store it proposed building for him at No. 49; he, however, rejected the plans insisting they did not conform to the store as it was prior to the fire. Thereafter defendant advised plaintiff it would not provide space for him in the new building.[8] Plaintiff objected and, as on previous occasions, demanded that the storeroom and basement covered by his lease be restored for his occupancy for the balance of the term.

A new building, consisting of one store and basement covering the entire area, was completed March 1, 1948. No space was provided for plaintiff.

Plaintiff insists defendant agreed in the lease to restore the premises for his occupancy for the balance of the term; and that his failure to provide space in the new building constituted an eviction entitling him to damages.

[■] If the landlord was so bound[9] and, notwithstanding such obligation, held

3. Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 497, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477; Guaranty Trust Co. of N. Y. v. York, 1945, 326 U.S. 99, 108. 65 S.Ct. 1464, 89 L.Ed. 2079; Holmberg v. Armbrecht, 1946, 327 U.S. 392, 394, 66 S.Ct. 582, 90 L.Ed. 743, 162 A. L.R. 719; Angel v. Bullington, 330 U.S. 183, 186, 187, 67 S.Ct. 657, 91 L.Ed. 832; Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 555, 69 S.Ct. 1221, 93 L.Ed. 1528.

4. Continental Collieries, Inc., v. Shober, Jr., 3 Cir., 1942, 130 F.2d 631, 635; Aralac, Inc. v. Hat Corp. of America, 3 Cir., 1948, 166 F.2d 286, 289.

5. Ritchie v. Atlantic Refining Co., D.C. N.J.1947, 7 F.R.D. 671; Leimer v. State Mutual Life Assurance Co., etc., 8 Cir., 1940, 108 F.2d 302, 304.

6. "The Lessor * * * being the tenant * * * of premises situate at 49 South Main Street * * * demises and leases to the Tenant and said Tenant * * * rents and takes * * * a store * * * known as No. 49 South Main Street, there being a storeroom and basement thereunder."
"* * * it being distinctly understood and agreed, however, that said roof is no part of this demise * * *."

7. Two months remained of the term actually in effect. The renewal was not effective until May 1 thereafter.

8. "After serious consideration of the many problems involved, we have decided that it will be impossible for us to give you a store in our Wilkes-Barre property.
Our thinking was influenced to a great extent by the fact that the unexpired term of your lease is relatively short, and that the expense of providing you with the kind of store you want would impose on us a burden that would be out of all proportion to any benefit which you might derive from the store during the remainder of your occupancy.
We trust that you will understand our position in this matter and the necessity for our decision."

9. The landlord cannot oust the tenant and repossess himself of the premises until the tenancy has been terminated. Magaw v. Lambert, 3 Pa. 444; Hoeveler v. Fleming & Co., 91 Pa. 322; Heller v. Royal Ins. Co., 133 Pa. 152, at page 160, 19 A. 349, 7 L.R.A. 411; Id., 151 Pa. 101, 25 A. 83. Until that event occurs the tenant has the right to exclusive possession under the lease against the landlord. St. Vincent's R. C. Cong. v. Kingston Coal Co., 221 Pa. 349, 364, 70 A. 838. There

adversely so as to deprive the tenant of the beneficial enjoyment of the premises to which he was entitled, it would constitute an eviction. Adler v. Sklaroff, 154 Pa. Super. 444, 447, 448, 36 A.2d 231; Kelly v. Miller, 249 Pa. 314, 316, 317, 94 A. 1055; Kahn v. Bancamerica-Blair Corp., 327 Pa. 209, 212, 214, 193 A. 905; Chelten Ave. Bldg. Corp. v. Mayer, 316 Pa. 228, at page 231, 172 A. 675, 93 A.L.R. 1471.

Viewing the lease and renewals thereof as a whole, what are the respective rights and obligations of the parties in the light of applicable principles of Pennsylvania law? Girard Trust Co. v. United States, 3 Cir., 149 F.2d 872, 874.

The complaint refers to "building or buildings". It is not clear whether there were separate and distinct buildings or one building with separate stores and basements.

Assuming there were separate buildings plaintiff's lease did not include an entire building but only a portion thereof. The roof was excepted; his storeroom and basement were subject to the servitude of light, water and steam supply "to the other tenants"; nothing was said about land. Although, as a general rule, the demise of a building includes the land thereunder, Bussman v. Ganster, 72 Pa. 285; Bennet v. Bittle, 4 Rawle, Pa., 338, 342; 2 Thompson, Real Property, § 1668,[10] the lease agreement may show the intention of the parties to be otherwise. See Rogers v. Snow, 118 Mass. 118 and Biordi v. Yanosevich, 93 Pa.Super. 578.

Here we find no land was included in the demise beyond that connected with the enjoyment of the particular portion covered by the lease. In such a tenancy there is no understanding that an estate in the land upon which the building is erected is granted. The thing demised was not a space in air but a portion of the building. City of Butler v. Western Union Tel. Co., 93 Pa.Super. 533, at page 538; Stanley Drug Co. v. Finance Realty Corp., 15 Pa. Dist. & Co. R. 461, 465; Shawmut National Bank v. City of Boston, 118 Mass. 125, 128; Stockwell v. Hunter, 11 Metc. 448, 52 Mass. 448, 45 Am.Dec. 220; Koplo & Koplo v. Ettenger, 84 Pa.Super. 358, at page 361; Paxson & Comfort Co. v. Potter, 30 Pa.Super. 615, 616; Moving Picture Co. v. Scottish U. & N. Ins. Co., 244 Pa. 358, at page 363, 90 A. 642, and see 32 Am.Jur., Landlord & Tenant, §§ 493, 494, 495, 828; Fuchs v. Goe, 62 Wyo. 134, 163 P.2d 783, at page 797, 166 A.L.R. 1329; Szulerecki v. Oppenheimer, 283 Ill. 525, 119 N.E. 643.

If land were included, ordinarily the tenant would have the right to the use thereof until the end of the term.[11]

---

is a presumption that the status continues. Donze v. Devlin, 329 Pa. 1, at page 3, 195 A. 882.

10. "The term 'premises' is used in common parlance to signify land, with its appurtenances; but its usual and appropriate meaning in a conveyance is the interest or estate demised or granted by the deed." Black's Law Dictionary, 3d Ed. See Rohrbacher's Estate, 168 Pa. 158, at page 165, 32 A. 30, and see Shickley v. Philadelphia & R. C. & I. Co., 274 Pa. 360, at page 362, 118 A. 255; Meucci v. Gallatin Coal Co., 279 Pa. 184, at page 186, 123 A. 766.

11. See Note 9, supra, and 51 C.J.S., Landlord & Tenant, § 370, p. 1108.

Because of our conclusions herein, we set to one side consideration of impossibility of performance. "The law upon the matter is undoubtedly in process of evolution." 6 Williston, Contracts, Rev. Ed., § 1931, p. 5408. At the commencement of the term, the balance of which is the basis of plaintiff's claim, there was no storeroom or cellar of which plaintiff could take possession. The agreement did not specifically provide for such contingency. The time between the making of the renewal agreement, Feb. 17, 1947, and plaintiff's commencement in possession thereunder was not part of the term granted. Taylor v. Terry, 71 Cal. 46, 11 P. 813, 814; DePauw Univ. v. United Elec. Co., 299 Ill.App. 339, 20 N.E.2d 146, 149; Young v. Dake, 5 N.Y. 463, 55 Am.Dec. 356; Black's Law Dictionary, 3d Ed., p. 1717.

"It has been held that the destruction of a building which is under construction pursuant to an agreement to lease terminates such agreement." 51 C.J.S., Landlord & Tenant, § 195; Leventritt v. Cowell, 21 Cal.App. 597, 132 P. 627. "It is now well settled that where the existence of a specific thing is necessary for the performance of a contract, the acci-

Where only an interest in part of the building is demised, upon the total destruction of the building, ordinarily the whole estate demised would be extinguished; nothing would remain which the tenant could enjoy or claim and the relationship between the parties would be at an end. Koplo & Koplo v. Ettenger; Paxson & Comfort Co. v. Potter; Moving Picture Co. v. Scottish U. & N. Ins. Co., all supra.

 Of course the parties may vary their respective rights and obligations, 51 C.J.S., Landlord & Tenant, § 368(a); by an express agreement to restore;[12] and thereupon to continue the contract relationship with all its incidents to the end of the term.

Was there such an agreement to restore? To establish such a covenant, plaintiff relies upon Par. 11 of the lease which reads as follows:

In case the premises herein demised, or any part thereof, shall, during said term, be destroyed or damaged by fire, or other unavoidable casualty, so that the same shall thereby be rendered untenantable, then and in any such case, the rent reserved herein shall be proportionately abated until said premises shall have been put in proper condition by the Lessor, and thereupon this lease shall continue to the end of the term herein demised; provid-

ed, however, that the liability of the Lessor to restore or repair shall be limited to the extent only of the insurance monies received by the Lessor, or by the owner of said premises under the head lease. Provided, however, that if the premises are not fully restored to a tenantable condition within ninety (90) days after the fire, the Tenant shall have the right to terminate this lease, by written notice served upon the Lessor within one hundred (100) days after the fire.

 The general rule in Pennsylvania is that *"in the absence of an express agreement there is no implied obligation* on the landlord to repair demised premises, nor does he undertake that they are fit for the purposes for which they are rented, that they are tenantable or shall continue so. *If they burn down he is not bound to rebuild. The rule here * * * is caveat emptor. The lessee's eyes are his bargain. He is bound to* examine the premises he rents and *secure himself by covenants to repair and rebuild."* Moore v. Weber, 71 Pa. 429, 10 Am.Rep. 708 (italics supplied); Davis v. Pierce, 52 Pa.Super. 615, 617; Johnstown Millwork & Lumber Co. v. Varner, 117 Pa.Super. 374, at page 378, 177 A. 325; Wood v. Carson, 257 Pa. 522, at page 528, 101 A. 811; Federal Metal Bed Co. v. Alpha Sign Co., 289 Pa. 175, 180, 137 A. 189; Pennsylvania Co., etc. v. Bo-

---

dental destruction or non-existence of that thing excuses the promisor unless he has assumed by his contract the risk of its existence * * *. The same principle would excuse one who had contracted to lease property which was thus destroyed before actually leased· * * *." 6 Williston on Contracts, Rev.Ed., § 1946.

"There is an implied warranty that the condition of the premises remain substantially the same between the time of the execution of the lease and the beginning of the term. If this is not the case the landlord is not in a position to tender for occupation that which is described in the lease. If any material change has taken place during this period, the tenant is not bound to take possession: Schomaker v. Heinz, 77 Pa.Super. 30, 35." McCandless v. Findley, 86 Pa.Super. 288, at page 292; and see 32 Am.Jur., Landlord & Tenant, § 493, and cf. Greenberg v. Sun Shipbuilding Co., 277 Pa. 312, 121 A. 63. Would not the converse be true as to the

landlord? Cf. Spratt v. Greenfield, 279 Pa. 437, 124 A. 126, as to a sale of real estate. And see Restatement, Law of Contracts, § 460: "A duty to perform the promise * * * (b) is discharged if the thing * * * subsequently is not in existence in time for seasonable performance * * * unless a contrary intention is manifested * * *."

12. Absent an express covenant to restore, the tenant would not be obliged to rebuild where the premises are destroyed by fire without his fault. Long v. Fitzsimmons, 1 Watts & S., Pa., 530. Earle v. Arbogast & Bastian, 180 Pa. 409, 36 A. 923; Brinton v. Shenango Tp. School District, 81 Pa.Super. 450; but cf. Gettysburg Electric Ry. v. Electric Light Co., 200 Pa. 372, at page 379, 49 A. 952; Sankey et al. v. Martin & Frisbie, 93 Pa.Super. 389, at page 392; and see McKinley v. C. Jutte & Co., 230 Pa. 122, 79 A. 244, Ann.Cas.1912A, 452.

dek, 77 Pa.Super. 473; Levine v. McClenathan, 246 Pa. 374, 92 A. 317, L.R.A. 1917 B, 235; Irish, Trustee v. Rosenbaum Co. of Pittsburgh, 348 Pa. 194, 197, 34 A.2d 486; accord 32 Am.Jur., Landlord & Tenant, § 657; 51 C.J.S., Landlord & Tenant, § 366, p. 1079.[13]

Do the provisions of Par. 11, supra, considered in their context meet the required tests: The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties so far as that may be done without contravention of legal principles. Berridge v. Glassey, 112 Pa. 442, at page 455, 3 A. 583, 56 Am.Rep. 322; Bubb v. Parker & Edwards Oil Co., 252 Pa. 26, at page 29, 97 A. 114; Hempfield Tp. School Dist. v. Cavalier, 309 Pa. 460, 464, 164 A. 602.

The words employed will be given their ordinary and popularly accepted meaning in the absence of anything to show they were intended in a different sense. Hempfield Tp. School Dist. v. Cavalier, supra, 309 Pa. at page 464, 164 A. at page 602. The only inquiry which is generally pertinent is the meaning of the language used when judged by the standard adopted by the law. 3 Williston, Contracts, § 602. "It is not the province of the court, by construction, to change or make a new contract for the parties to a lease, or to supply material stipulations * * *." 51 C.J.S., Landlord & Tenant, § 232b, and see Girard Trust Co. v. Tremblay Motor Co., 291 Pa. 507, at page 514, 140 A. 506. "The freedom of interpretation permissible is * * * limited by the principle that unexpressed intention is of no legal effect." 3 Williston Op. Cit. supra, § 619; and see Delaware, L. & W. R. Co. v. Water Power & Supply Co., 227 Pa. 639, 76 A. 425; Paull v. Pivar, 161 Pa.Super. 233, at page 235, 238, 53 A.2d 826; Sanford-Day Iron Works v. Fancy Hill Coal Co., 321 Pa. 204, 206, 183 A. 770. "A court is not at liberty to read into a lease a meaning which the parties did not intend, or which they did not express in the language used

* * *." 32 Am.Jur., Landlord & Tenant, § 127, p. 130.

The tendency of modern decisions is not to imply covenants which might and ought to have been expressed, if intended. Sheets v. Selden, 7 Wall. 416, 74 U.S. 416, at page 423, 19 L.Ed. 166. Even where there is an express covenant, it will not be enlarged by construction; Liebmann v. Aldhous, 105 Misc. 728, 173 N.Y.S. 553; Richmond v. Lee, 123 App.Div. 279, 107 N.Y.S. 1072; Witty v. Matthews, 52 N.Y. 512; Freiot v. Jacobs, 209 App.Div. 334, 204 N.Y.S. 446; 51 C.J.S., Landlord & Tenant, § 368d, p. 1088; or beyond its fair intent.

Ordinarily, "any words that amount to, or import, an agreement are sufficient to constitute a covenant; no precise or technical language is required by law." 51 C.J.S., Landlord & Tenant, § 235, p. 864. "No particular form of expression is necessary to create an obligation on the part of the landlord * * * all that is necessary is that the language of the stipulation in the lease or the agreement indicates this to be the intention of the parties." 32 Am. Jur., Id., § 705; cf. 3 Williston, Rev.Ed., § 670, p. 1923, 1924, to the effect that promises may exist "* * * where the agreement shows that the parties must have intended an obligation though they failed so to state in clear terms * * *." The requirement, however, as to a covenant to restore in Pennsylvania is more exacting.

The standard set in Pennsylvania is that "in the absence of express agreement there is no implied obligation." The connotation of express and implied is obvious; see, e.g., United States v. Chicago, St. P., M. & O. Ry. Co., D.C., 151 F. 84, at page 92, and see Webster's New International Dictionary, 2d Ed., Unabridged: "Express" means "Directly and distinctly stated, not merely implied or left to inference * * * definite, clear, explicit, unmistakable; not dubious or ambiguous * * *."

13. As to the law generally, see Viterbo v. Friedlander, 120 U.S. 707, 7 S.Ct. 962, 30 L.Ed. 776; Felton v. City of Cincinnati, 6 Cir., 95 F. 336, 339, 340.

"A provision in a lease that should the property be destroyed by fire so as to be untenantable the conditions of the lease, such as the collection of rent, shall cease until repairs are made, or until the premises are rebuilt, imposes no obligation on the lessor to restore the premises." 51 C. J.S., Landlord & Tenant, § 368e, p. 1098.

"Covenants to the effect that the rental of the leased premises shall be suspended in the event the buildings thereon are rendered uninhabitable by fire until the landlord shall restore them, being for the benefit of the lessee, to relieve him from the obligation of paying rent for buildings rendered uninhabitable by fire, do not impose any affirmative obligation to rebuild or restore buildings upon the leased premises. 32 Am.Jur., Landlord & Tenant, § 709, p. 586.

"* * * These covenants are not affirmative obligations to rebuild or restore buildings upon the leased premises and they do not have that effect." (Italics supplied). See Note 28 A.L.R. 1535, at page 1539 citing Tatum v. Thompson, 1890, 86 Cal. 203, 24 P. 1009; Clark v. Wade, 1921, 54 Cal.App. 162, 201 P. 334; Gavan v. Norcross, 1903, 117 Ga. 356, 43 S.E. 771; Snook & A. Furniture Co. v. Steiner, 1903, 117 Ga. 363, 43 S.E. 775; Woodside v. Talley, 1910, 135 Ga. 337, 69 S.E. 492; Rogers v. Snow, 1875, 118 Mass. 118; Rogers v. Grote Paint Co., 1906, 118 Mo.App. 300, 94 S.W. 549; Witty v. Matthews, 1873, 52 N.Y. 512; Monahan Exp. Co. v. International Confectioner, Sup., 1916, 161 N.Y.S. 303.

Although actually decided on the basis of abandonment, the general rule was approved in Girard Trust Co. v. Tremblay Motors Co., 291 Pa. 507, at page 518, 140 A. 506, at page 510; " 'the general rule is that such a covenant (obliging the landlord to rebuild) is not to be implied' (see Moore v. Weber, 71 Pa. 429, 432, 10 Am.Rep. 708) * * * the provision in the lease, that 'should the * * * premises at anytime during the term be totally destroyed by fire it is understood and agreed that no rent shall be claimed or collected by * * lessor from * * * lessee until premises shall have been completely rebuilt and placed in tenantable condition,' imposes no obligation to restore on the lessor. This provision * * * simply relieves the lessee from his obligation to pay rent until a new building is erected. * * *" And again, Id., 291 Pa. at pages 517, 518, 519, 140 A. at page 510, "The contract provides that * * * in the event of destruction or damage by fire, the tenant, at the behest of the landlord or the contractor in charge of restoration, is to move his goods * * in the demised premises from place to place as required * * * the provision * * is only to facilitate the rebuilding of the property if the lessor should wish to do so, and it does not bind the latter to make use of the opportunity thus given to rebuild; much less can it be construed as the express covenant to rebuild which the law requires in order to fix a landlord with that duty." (Italics supplied).

 The addition of the clause "and thereupon this lease shall continue to the end of the term herein demised" does not supply the deficiency in language. That provision was merely in connection with the suspension of the rent payments and fixing a time for the possible renewal of such obligation on the part of the tenant in the event the premises were voluntarily repaired or restored by the landlord after a fire or other unavoidable casualty.[14]

14. "If, in order to collect rent, the landlord must rebuild, and in such a way that the tenant can use the premises for all the purposes mentioned in the lease, it is because the contract contains either an express or an implied warranty by the lessor that the building on the demised premises was suitable for all of these purposes at the time the contract was made, and that it would continue in such condition for the duration of the term; yet the lease discloses no such warranty, and under the law of Pennsylvania it is well settled that there is no implied warranty between landlord and tenant that demised premises are suitable for the purposes for which they are let. Federal Metal Bed Co. v. Alpha Sign Co., 289 Pa. 175, 180, 137 A. 189." Girard Trust Co. v. Tremblay Motor Co., supra, 291 Pa. at page 519, 140 A. at page 510.

Paxson & Comfort Co. v. Potter, 30 Pa. Super. 615; Demas v. Laskey, 358 Pa. 633 at page 635, 58 A.2d 134. At best there was only an implication of a covenant to restore. See 2 Thompson, Real Property, § 1669.

What of the "proviso clause" relating to insurance?[15] Nowhere in the complaint is there any mention of fire insurance having been placed or collected. Assuming defendant collected fire insurance, that per se would not enlarge its obligation under the lease. Magaw v. Lambert, 3 Pa. 444; Fisher v. Milliken, 8 Pa. 111, at page 121, 49 Am.Dec. 497; Bussman v. Ganster, 72 Pa. 285, 289; Girard Trust Co. v. Tremblay Motor Co., supra, 291 Pa. 507, at page 517, 140 A. at page 506; Pennsylvania Co. v. Bodek, 77 Pa. Super. 473. While a proviso is sometimes used to introduce a covenant, its proper use is to qualify what is already affirmed or to except something from inclusion therein, but not to enlarge; Black's Law Dictionary, 3d Ed., p. 1456. The word "provided" generally introduces a clause in a contract which states a condition. Forscht v. Green, 53 Pa. 138; Appeal of Smith, 103 Pa. 559, 562, and see Paschall v. Passmore, 15 Pa. 295, 307, 308; and see Aaron v. Woodcock, 283 Pa. 33, at page 43, 128 A. 665, 38 A.L.R. 1251. Vol. 34, Words and Phrases, Perm.Ed., p. 675.

In view of the foregoing, we hold that Par. 11 per se or in context did not constitute a covenant to restore.[16]

Although there was no covenant to restore, there was an agreement that if defendant did in fact restore the lease would continue to the end of the term. If

---

Absent an express agreement to that effect, a covenant to pay rent is not extinguished by the destruction of the leased premises by fire. Hazlett v. Powell, 30 Pa. 293, at page 298. Nothing but a surrender, a release, or an eviction can absolve a tenant from the obligation to pay rent. Fisher v. Milliken, 8 Pa. 111, at page 120, 49 Am.Dec. 497; Dyer v. Wightman, 66 Pa. 425.

The fact that the landlord may have received insurance money is of no consequence. Hoy v. Holt, 91 Pa. 88, 36 Am. Rep. 659; Jacobs v. Mingle, 278 Pa. 250, at page 254, 122 A. 285; Sankey v. Martin & Frisbie, 93 Pa.Super. 389, at page 391.

15. "Provided, however, that the liability of the lessor to restore or repair shall be limited to the extent only of the insurance monies received by the lessor, or by the owner of said premises under the head lease."

16. As to effect of dicta in absence of square holding, see Texarkana v. Arkansas Louisiana Gas Co., 306 U.S. 188, at page 198, et seq., 59 S.Ct. 448, 83 L.Ed. 598.

The rule that in case of doubt or uncertainty as to the meaning of the language used in a lease its provisions will be construed most strongly against the lessor and in favor of the lessee is primarily one of construction and must give way to the legal requirement that such a covenant must be expressed and cannot be implied. See, e. g., Larsh et al. v. Frank & Seder of Pittsburgh, Inc., 347 Pa. 387, at page 391, 32 A.2d 219; 51 C.J.S., Landlord & Tenant, § 232(l), p. 859; 32 Am.Jur., Landlord & Tenant, § 128; 3 Williston,

Op. Cit. supra, § 621; cf. Restatement, Law of Contracts, § 236(d).

Indicative of the requirements in this kind of case in analogous situations, see Lindsay Bros., Inc., v. Curtis Pub. Co., 236 Pa. 229, at page 234, 84 A. 783, 42 L.R.A.,N.S., 546: "Nothing short of the clearest expression of an agreement by the parties to that effect". McClintock & Irvine Co. v. Aetna Explosives Co., 260 Pa. 191, at page 195, 103 A. 622, at page 623, Ann.Cas.1918E, 1078. "No explicit provision * * *." Bornstein v. Salerno, 285 Pa. 507, 510, 132 A. 700, 701 " * * * the lease * * * contains * * * references and special provisions on the subject of rebuilding in case of fire, none of which explicitly places that burden * * *." Girard Trust Co. v. Tremblay Motor Co., supra, 291 Pa. at page 518, 140 A. at page 510. See also Pennsylvania Co. v. Bodek, supra, 77 Pa. Super. at page 474, 475; Irish, Trustee v. Rosenbaum Co., 348 Pa. at page 197, 34 A.2d 486; and cf. the rule stated in White Heat Products Co. v. Thomas, 266 Pa. 551, 555, 109 A. 685, and in Broad & Sansom Realty Co. v. Fidelity Building Corp., 292 Pa. 287, at page 291, 141 A. 34.

As to the burden of seeing that such a provision is in the agreement, " * * * tenant * * * must require such a covenant to be inserted in the lease * * *." Levine v. McClenathan, 246 Pa. 374, at page 376, 92 A. 317, at page 318, L.R.A.1917B, 235; Hollidaysburg Seminary Co. v. Gray, 45 Pa.Super. 426, at page 432. As to the burden of proof, see Sunseri v. Garcia & Maggini Co., 298 Pa. 249, 253, 148 A. 81, 67 A.L.R. 1428.

the landlord did in fact restore, the plaintiff would be entitled to occupy the storeroom and basement for the remainder of the term. Smith v. Kerr, 108 N.Y. 31, 15 N.E. 70, 2 Am.St.Rep. 362; Rogers v. Snow, supra; 51 C.J.S. Landlord & Tenant, § 366d, p. 1080; 32 Am.Jur., Landlord & Tenant, § 828.

Absent a covenant to restore, and absent any interest in the plaintiff in the land itself, defendant had the right to construct a building such as it did in fact; to make such changes as it saw fit, making no provision for the plaintiff. By constructing a building of a different character, defendant terminated the possibility of application of the provision for resumption of the contractual relationship. See Snook v. Steiner, 117 Ga. 363, 43 S.E. 775; 28 A.L.R. 1540; Rogers v. Grote Paint Co., supra, 118 Mo.App. 300, 94 S.W. 549.[17]

We find there was no interference by the landlord with any beneficial enjoyment of the premises to which tenant was entitled;[18] no eviction; and that the complaint does not state a cause of action upon which relief can be granted. It will therefore be dismissed by an order filed herewith.

Likewise the rule that an interpretation given by the parties themselves will be favored is not applicable because the parties are at complete variance; see, e. g., Monongahela St. Ry. v. Philadelphia Co., 350 Pa. 603, 618, 619, 39 A.2d 909.

17. Plaintiff relies upon Dallas Opera House Ass'n v. Dallas Enterprises, Inc., Texas, Tex.Civ.App.1926, 288 S.W. 656, affirmed, Tex.Com.App.1927, 298 S.W. 397; there the obligation to restore was clearly expressed; Phillips v. Stevens, 16 Mass. 238, apparently for the proposition that the lessee was obliged to protect himself by appropriate words, but cf. the Pennsylvania cases, supra. See also and cf. Headnote 1 in Providence Lunch Co., Inc., v. Pa. Fire Ins. Co. of Philadelphia, 53 R.I. 301, 166 A. 352; Vorenberg v. Wm. Filene's Sons Co., 227 Mass. 575, 116 N.E. 903. See Note 28 A.L.R. 1535.

18. See 3 Williston, Contracts, Rev.Ed. § 891, p. 2524.