WILLIAM R. FRIEDMAN, Respondent, v FOODARAMA SUPERMARKETS, INC., Appellant.

First Department, December 16, 1975

*Wallace J. Borker* of counsel *(Stephen Sussman* and *Michael J. Thomas* with him on the brief; *Borden & Ball,* attorneys), for appellant.

*Abe Siegel* of counsel *(Vitalis L. Chalif* and *Julius Winn* with him on the brief; *Siegel, Chalif & Winn, P. C.,* attorneys), for respondent.

*Per Curiam.* By a lease of December 10, 1970, the plaintiff-respondent landlord and the defendant-appellant arranged for the latter to become a tenant of a supermarket to be constructed in Sinking Springs, Pennsylvania. A similar lease, dated January 10, 1972 provided for the defendant's tenancy of a satellite store to be constructed next to the supermarket. Both leases were for 25 years with rental payments for the satellite to commence when rental payments began for the supermarket. The tenant was obliged by the agreements to enter into such contracts "as may be necessary in order to complete site preparation and construction" of both stores.

While obliged to bear the cost of construction, the tenant was entitled to reimbursement by the landlord through requisitions "as needed for the payment of statements rendered by the general contractor and suppliers for work performed and materials delivered". Reimbursement was limited to $550,000 for the supermarket and $192,000 for the satellite, with the landlord to pay within 10 days of submission of certificates by the tenant. The leases provided that if the landlord failed to pay within that period, the tenant could give written notice of default to give rise to a 10-day period within which the landlord might cure the default, and if there were no cure, the tenant could opt to terminate the leases.

The tenant entered into construction contracts for both stores for a total cost of $912,000. Initially the landlord and tenant contemplated merely a shell for the satellite but their plans were later amended to include the interior as well.

On October 31, 1972, the supermarket was completed, the tenant began operating it and commenced rental payments on both stores. Meanwhile, the satellite had progressed to a point short of completion of the interior. The tenant, attempting to secure a subtenant for the satellite, decided to halt its construction at that point, to permit completion of the interior as desired by the potential subtenant. Approximately $53,000 of work was needed for completion. In the meantime the landlord had been making reimbursements in accordance with the tenant's requisitions.

On September 18, 1972, the tenant had sent the landlord a letter giving a breakdown of the work accomplished and an allocation of the costs between supermarket and satellite, and it told the landlord that work had been halted on the satellite in early September. Nonetheless, the landlord thereafter paid the eighth and ninth requisitions by the tenant totaling $375,000. By this time the landlord had reimbursed $705,000 of the construction expenses that had cost the tenant $880,-500.

The tenth requisition was submitted in November, 1972, seeking reimbursement of $115,000, but the landlord balked because this would take him over his ceiling. The parties compromised on a figure of $76,768 by a letter which, though dated December 28, 1972, apparently was not executed until February 7, 1973. The tenant paid rent through August, 1973 while awaiting payment of the $76,768. The landlord refused to pay, protesting that the satellite must first be completed.

The refusal, plus disappointing business in the supermarket, prompted the tenant to serve a notice of default based on the refusal. When the money remained unpaid, the tenant exercised its option to terminate the leases effective August 31, 1973.

The Special Term denied the defendant tenant's motion for summary judgment on its counterclaim to declare the termination valid, declared it invalid and granted the plaintiff summary judgment for rent up to its termination. Its rationale was based upon an implied condition precedent to the tenant's reimbursement of construction costs under the leases; that there was an implied requirement that a construction contract remain in force up to completion of both buildings; that when the tenant stopped work on the satellite awaiting a subtenant, the underlying construction contract was no longer in existence and the tenant lost its right to demand reimbursement.

Although there does not appear to be any substantial difference between the laws of New York and Pennsylvania on the questions involved, the tenant urges the application of the latter. (See *Mallory Assoc. v Barving Realty Co.,* 300 NY 297, 301.) This contention is not disputed by the landlord.

If for no other reason, summary judgment should have been denied to the plaintiff landlord because his payment of two requisitions after receiving the letter of September 18, 1972 advising that construction on the satellite had been halted raised a fact issue of waiver *(Engle v National Council, Junior Order United Amer. Mechanics. of U. S. of North Amer.,* 133 Pa Super Ct 149). Bearing also upon this issue would be the landlord's entering into negotiations on the amount of the last requisition and his promise to pay it.

"The standard set in Pennsylvania is that 'in the absence of express agreement there is no implied obligation.'" *(Solomon v Neisner Bros.,* 93 F Supp 310, 316.) Under the leases the landlord unconditionally undertook reimbursement in accordance with the submission of certificates for materials furnished and labor performed. The completion of the stores, or the continued existence of a contract to complete, was not essential to the reimbursement provision since it was contemplated that the tenant would spend more for construction than it would be reimbursed and the method of reimbursement would require the landlord to reach his ceiling before construction would have been completed. The ceiling might

well have been reached before the tenant decided to halt construction on the satellite. If that had been the case, nothing in the leases would have justified the landlord's refusal to reimburse. The leases' lack of any schedule for the completion of construction with a tie of reimbursement to that schedule underscores the independence of the reimbursement provision. The Special Term's implication of a condition precedent to reimbursement was unjustified *(Britex Waste Co. v Schwab & Sons,* 139 Pa Super Ct 474).

"Covenants in leases are mutually independent unless in terms expressly conditional" *(Roth v Golden Slipper Rest. & Catering,* 167 Pa Super Ct, 558, 560). The landlord's obligation to reimburse was such an independent covenant. When he defaulted without cure, the tenant had the right to terminate. Since the requisition underlying the default was not referable solely to the satellite, termination of both leases was proper.

The order and judgment should be reversed, on the law, to deny summary judgment to the plaintiff and to grant summary judgment to the defendant dismissing the complaint and declaring valid the defendant's exercise of its right of termination of both leases, and severing its other counterclaims, with costs.

MARKEWICH, J. P., MURPHY, LUPIANO, TILZER and LYNCH, JJ., concur.

Order and judgment, Supreme Court, New York County, entered on June 3 and June 9, 1975, unanimously reversed, on the law, the judgment vacated, plaintiff's motion for summary judgment denied, and summary judgment granted to defendant dismissing the complaint, and, with respect to defendant's fourth counterclaim, declaring valid the defendant's exercise of its right of termination of both leases, and severing its other counterclaims. Appellant shall recover of respondent $60 costs and disbursements of this appeal.